Opinion of the court delivered by
Judge Catron.—
In 1798, Overton caused an attachment to issue against the estate of David Allison, which was levied upon land. At this stage of the proceeding Allison died. A sci.fa. was run to bring in William Blount, as executor of Allison. Blount made no defence, and judgment was rendered against him by default, and Overton recovered against him the sum claimed. At the next term, an order was made by the Sumner county court, where the proceedings were had, that a sci.fa. should issue against the heirs of David Allison, to show cause why judgment should not be entered up against them for the amount recovered by the judgment against the executor. No heirs were named in the writ- This, and a succeeding sci.fa. were returned “not found.” A judgment was then ren- *395 •dercd against the heirs of David Allison “according to sci. fa.” Various executions issued upon this judgment; the first in 1801, and levies and sales were made by virtue thereof,
In the fall of 1819, Overt.on caused an execution to be delivered to the sheriff of Stuart county, grounded upon this judgment, and caused it to be levied upon a tract of land of 1000 acres, lying within said county. The land was advertised and sold to complainants for $240, and a deed was made to them in the usual form by the sheriff.
In 1822, a compromise took place between Overton, Andrew Jackson and others, in reference to claims Jackson and Overton had against the estate of David Allison, and the 1000 acre tract of land was by Jackson conveyed to Overton. Upon this title, Overton brought ejectment againt the complainants, and obtained a verdict and judgment for the land. To enjoin this, the bill was filed, and an injunction awarded to stay the execution of the writ of possession, which was made perpetual by decree on the final hearing before the chancellor, from which there was an appeal prosecuted to this court.
It is contended for complainants, that Overton having induced them to purchase at the sheriff’s sale, is estopped to set up his subsequently acquired deed.
Overton, neither by himself, or through his agent, made any representations to complainants as to the state of the title. The facts seem to be, that Samuel R. Overton, a relation of defendant, transacted the business, and that his object was to buy in the lands of Allison’s heirs, at a great- sacrifice, upon speculation. That the complainants attended the sale, and bid from similar motives, each risking the title, acting in opposition to each other, and being unacquainted.
Where one man stands by, and knowingly permits another to purchase and expend money on land, under an erroneous opinion of title, without making his claim known, he shall not afterwards be permitted to exercise his legal right against such deceived purchaser. (2 Atk. 86. 1 Eq. Ca. Ab. 356. Prec. in Ch. 37. 2 Ver. 150. 3, *396 Alk. 692. 5 Ves. 688. 7 Ves. 230. 1 Johns. Ch. R. 311, 354.
Overton hod no title at the time of the sheriffs sale, and was endeavoring to obtain it, for which purpose \As agent bid up the land to nearly the price of complainant’s bid. It is impossible to apply the principle to Overton. To a party situated as Jackson was, alone can the doctrine he made to apply, and in reference to him even, it would be inapplicable. Any man's title could be defeated if a purchaser at execution sale could say to the legal owner, ignorant or conusant of the pretended purchase, “ You passively stood by and permitted meto be deceived.” Caveat emplor is the undoubted rule in relation to titles in cases of execution sales of land; there is no warranty of title, either express or implied, by any one. (1 Ten. R. 286. 4 Hayw. R. 179. 2 Bay’s Rep. 171. 2 Murphy’s N. C. Rep. 291. 1 Devereux and Badger’s R. 39. 2 Bibb’s R. 95. Martin’s R. 575, 615.
It is next contended the rule applies to Overton, “that where A sells land to B, and executes a conveyance purporting to be in fee with warranty of title, when A liad no estate, but afterwards has conveyed to him the fee, the benefit of this conveyance shall enure to B the purchaser. (1 Inst. sec. 446, 265, a. and b. Litt. see. 476. 10 Viner’s Ab. 483. 1 Salk. 275, 6. 2 Salk. 685. 4 Com. D. Estoppel (A. 2. 1 Johns. Ca. 90. 4 Johns. R. 194. 12 Johns. R. 201. 13 Johns. R. 316.
The courts of New York seem to treat this as an es-toppel, proceeding'upon the ground that the grantor is not peimitted to gainsay his own deed by alleging he had no title at the time he conveyed. All estoppels proceed upon this, that in the nature of evidence, some is of too high a grade to be denied. A fact admitted by recital, or directly in a covenant or deed, concludes all the parties to it, and cannot be averred against. (Com. D. Estoppel (A. 2.
We doubt whether this be the true reason, however, why, if A conveys to B, with warranty of title when he had none, and afterwards by conveyance acquires the *397 fee f:om C, the benefit of the latter deed shall enure, to U. Coke gives the better reason in his commentary on the 265 section of Littleton. When speaking of the release, he says: “If there is a warranty of title in the deed from A to B, by force of which were B evicted, lie could recover from A in damages to the value of the land, then A and his heirs would be rebutted and barred of any remedy by action upon the newly acquired deed. And this, to avoid circuity of aclion, which is not favored in law.”
But if there was no warranty of title to sustain the action of covenant upon eviction, the aclion of A upon the newly acquired title would not be barred. (Litt. see. 265. 14 Johns. R. 194. We have seen a sheriff’s deed is ¡i conveyance of the debtor’s legal till, without warranty express or implied on the part of the debtor-, creditor or sheriff’; therefore this incident of express warranty' does not apply to it in law. (4 Hay. 179. 2 Bay’s R. 171. 2 Com. Rep. 188. Had Overton made a deed similar in effect, say a release void in law to complainants, he would not have been barred to set up and prosecute an ejectment upon the deed subsequently obtained from Jackson. Neither could he have been restrained in equity. We •take it to be a settled rule, unless there has been fraud •in the transaction, that where the grantee takes no covenant for title, he is without remedy at law or in equity. Mr. Sugdcn has brought together the authorities in hr3 treatise on Vendors, 346, 7. 3d Ed.; as has Judge Kent. (2 Cain’s R. 188. 3 Ves. R. 235.
As an assurance of title, a sheriff's deed stands lower than any other, and equity can afford no relief. (4 Hay. 179. 2 Bay, 170. 2 Murphy, N. C. R. 291.
Equity follows the law. Where there is no legal liability, equity can create none. Head vs. Stamford, (3 P. Wms. 409. It follows, that a contract imposing no legal obligation, can be enforced no where. Rutherford vs. Wheaton, Nashville, 1830.
No legal liability was imposed upon Overton by the sheriff’s deed to protect the title of complainants, express or implied: They purchased such title as Allison’s heirs *398 had, running all risks of its validity. (2 Bay’s Rep. 171. The heirs had no title, the deed operated nothing, is void jn haw, and equity cannot help it; to do so, would be af-folding protection to a mere nullity, which cannot be done at law or in equity. (Litt. 265 a. 2 Bibb’s Rep. 95.
Ibis position is undeniable, and covers the whole case so far as protection is sought against the ejectment.
To decree a perpetual injunction in this cause, would in substance be a decree of specific performance. The complainants paid something like one tenth of the value of this land; and to decree it to them, would in effect be, in that proportion, a greater fraud upon the owner, than he would commit upon them, by retaining their money'. Neither the one or the other can be tolerated in a court of equity; the greater principle governing which is equality. (Fran. Maxm. 3.
It has been contended for the defendant, and admitted to be true by complainant’s counsel, “that if the land cannot be obtained by perpetual injunction, the purchase money cannot be decreed to complainants.” This is certainly' true, in reference to the purchase of a defective title, because as to the title, the rule, caveat emptor, applies; but it is just as untrue, in reference to them'd judgment of the execution creditor. Suppose Overton had obtained from the clerk of some court, other than Sumner, an execution not authorized by any judgment; the writ had been fair on its face; the sheriff had levied it, and obtained f>2i0, by virtue thereof, from complainants, which sum lie had paid over to Overton: Will anyone doubt, (hat it could nolhavc been recovered from him,because obtained by a false token? EIow does the present case differ from the one supposed? in no wise,other than there was an appearance of a judgment upon the records of the Sumner county court, which exempted (lie clerk, and the plaintiff in the action, from the charge of fraud, for issuing the execution. 1. No plea of fully administered was found for the executor. 2. The heirs were not named in the writ of scire facias, or their names returned by the sheriff. 3. They were not served, or the *399 fact of non residence returned. For these and other reasons, the proceedings are void. Roberts vs. Busby and wife, (3 Hay. Rep. 299. Sewell and Jones vs. Williams, (5 Hay. Rep. 280. Same case in ibis court in mana-script, (a) Boyd vs. Armstrong, (b) and Peck vs. Wheaton. (c)
If A obtains money from B, without consideration, either through fraud or mistake, B can recover it back. (Bul. N. P. 131. Esp. N. P. 2 to 6. 6 Term Rep. 606. In such cases the action of assumpsit was substituted for a bill in equity, as late as the days of Lord Mansfield. The defendant having answered and come to a hearing, cannot then object to the jurisdiction of a court of equity, when the matter is doubtful. (2 Johns. C. C. 369. 4 Johns. C. C. 290. Courts of equity in this State have assumed jurisdiction, and afforded relief, in similar cases. Robertson vs. England at Sparta, Ward and others vs. Southerland and M’Campbell, (Peck’s Rep. Appendix.— In these cases an execution on a void judgmenthad been put int) the hands of the sheriff of White, and money obtained upon it; the only question the court laid stress' upon was, is thejudgment void? Judge Haywood thought where the judgment had been obtained in the lifetime of the ancestor, the creditor could reach the lands descended, without any administrator being appointed, but felt himself bound by the case of Boyd vs. Armstrong, decided otherwise by a majority of the supreme court.
Overton will refund to complainants $240, with interest thereon from the 6th day of November 1819.
It is said defendant, did not receive from the sheriff,the whole amount. It is his misfortune; had he let his void judgment rest, it would not have happened. The’ whole proceeding on the execution being void, the sheriff will be authorized to pay the overplus to the defendant; *400 and the decree will order that he may apply and receive J I l J
The decree below is entirely reversed; therefore,the will pay the costs of the cause in thiscovrt, and the defendant of the court below.
The bill so far as it enjoins the action of ejectment, will be dismissed.
Decree accordingly.
ua«agBaaa

 Reported 1 Yerger’s Rep. 83.

 1 Yerger’s Rep. 40.

 Martin and Yerger’s Rep. 383.