GATES, WOOD and McKNIGHT *v.* R. C. BRINKLEY.

1. RESTITUTION. If the defendant pay a judgment which is after-
   wards reversed, he may have an order on the plaintiff, or on
   his personal representative, if the plaintiff be dead, for the
   amount so paid to be restored to him.

2. SAME. *Evidence. Payment.* The fact of payment may be shown
   by parol evidence.

3. SAME. Money received by the plaintiff from a *party* defendant,
   as the price of the judgment under an agreement, in form a
   sale, is, in effect, a payment, and, as such, will be ordered to
   be restored, if the judgment be subsequently reversed.

4. ADMISSIONS OF COUNSEL. Admissions of counsel in argument,
   made under a misapprehension, may be retracted, but the real
   facts must be made to appear.

FROM SHELBY.

Appeal from the Chancery Court at Memphis.
R. J. MORGAN, Ch.

L. W. FINLAY for Complainants.

W. W. GOODWIN for Defendant.

McFARLAND, J., delivered the opinion of the
Court.

This litigation begun several years ago by a
bill filed by Gates, Wood and McKnight, to be
relieved from the payment of several notes given
by them to Brinkley for the rent or lease of cer-

tain property in Memphis, upon the ground that they had been dispossessed of the property by the United States military forces during the late war.

The relief was refused and a decree rendered by the Chancellor against the complainants for the amount of the notes less certain credits. The complainants appealed, and in this Court the decree was modified as to the amount by giving relief as to one of the notes, but rendering a decree against complainants and their sureties on appeal bond, J. D. Williams and Samuel Mosby, for $9,146.31 and one-half the costs of this Court.

Subsequently a writ of error was prosecuted to the Supreme Court of the United States, where the decree of this Court was reversed, and a mandate has been presented directing a decree to be entered awarding a perpetual injunction in accordance with the opinion of that Court.

It is now alleged that pending the writ of error in the Supreme Court of the United States, there being no supersedeas, the complainants and their sureties paid the decree of this Court in full, and motion is made to have the amount restored.

The defendant denies that the decree of this Court has been *paid*, but avers the facts to be, that after the decree was rendered, Mosby, one of the sureties, finding that his principals and co-security were in doubtful circumstances, under the advice of counsel for his own protection, instead of paying and satisfying the execution, purchased the judgment from Brinkley, paying him the

amount thereof, and afterwards the execution was allowed to run in the name of Brinkley, but really for the use of Mosby, upon which $2,405.31 was collected out of the property of the principals, and entered as a credit on the execution for the benefit of Mosby. This course was adopted in order to keep the judgment and execution alive so it could be used for the benefit of Mosby, the surety.

We do not think this alters the case or relieves Brinkley or his representative from the consequences of the reversal by the Supreme Court. Whatever may have been the form, the substance is, that he has collected or received this sum of money which the Supreme Court has decided he was not entitled to. The decree of the Supreme Court of the United States was long subsequent to the supposed transfer of the judgment to Mosby, but the decree of that Court was against the executor of Brinkley, against whom the cause was revived without objection or suggestion that the claim did not belong to him.

The amount paid should be restored with interest.

The complainants also move for a decree for the sum of two small credits, which they claim to have paid upon the notes, which were allowed by the Chancellor and by this Court.

It is urged, that as it has been decided that they were not liable for any part of the notes, they ought to recover the payments or set-offs set

Gates *v*. Brinkley.

up against them. Whether they follow or not, it is sufficient to say that we find nothing in the opinion or mandate of the Supreme Court upon this subject, and we cannot go beyond it, and the motion, as to this matter, is refused.

The decree of restitution should be in favor of Mosby, McKnight and the assignee in bankruptcy of Gates and Wood, who was allowed to prosecute the writ of error in the Supreme Court jointly with McKnight. We leave them to settle between themselves their rights in the recovery.

Complainants also move for a decree for the costs of the Supreme Court, paid by them, but they have already a decree in that Court awarding execution for the amount.

They also move for the costs of this Court, paid in accordance with our decree, and the motion will be allowed.

Upon petition to re-hear, McFARLAND, J., said:

An earnest petition to re-hear has been presented.

1st, It is argued that in cases of this character, restitution will not be ordered except where specific property has been received, and remains so that it can be restored in *specie*, and consequently money paid cannot be restored, because the specific money paid has not been shown to be in the hands of the defendant.

Such a proposition we think cannot be maintained in reason, and some of the authorities re-

ferred to in the brief show the power to order restitution is not confined to the cases supposed.

We have held that a party paying money under a judgment afterwards reversed, may have an order that it be restored, and we have no doubt that the holding is correct.

2nd. It is insisted that restitution can only be ordered where the parties are the same, and that the executor of Brinkley is a new party in such a sense as to require a new and original proceeding to recover the money from him. We have no hesitation in holding against this proposition. The cause was revived against the executor of Brinkley in the Supreme Court of the United States and he stands in the shoes of Brinkley, and subject to the same remedies and proceedings as would have been allowed against Brinkley had he lived; and no injury can result to him personally, as the decree to be rendered against him must be satisfied out of the assets of Brinkley's estate in his hands.

There can be no good reason why a new suit should be resorted to, because of Brinkley's death.

Again it is argued that before restitution can be ordered the *record* should show the payment of the money and evidence *aliunde* cannot be resorted to. Of course we would not order the money restored if the *fact* of its payment remained in dispute or doubt. We do not see, however, why there may not be other modes of ascertaining the fact as conclusive as the return of an execution

satisfied. As, for instance, the admission of the parties by themselves or their counsel. We assumed that, in fact, the money was received by Brinkley from the admissions contained in the briefs of counsel in their answer to the motion. We accepted their statement of the facts to be entirely correct, and for that reason did not deem it necessary to require other evidence.

It is now assumed that the admissions were only made for the purposes of the argument. We certainly did not so understand it. In the brief then filed, signed by the same solicitors who present the petition to re-hear, after insisting that the decree of this Court was not *paid* or *satisfied* , the following language is used, to-wit: " The facts as they transpired are these : Upon the rendition of the parol decree of the State Supreme Court, S. Mosby and his attorneys, Harris, McKissick & Turley, finding that Gates, Wood and McKnight, and J. L. Williams were in failing circumstances, set about to secure him, Mosby, every means of protection against the loss of the entire judgment. Upon his, Mosby, becoming their surety, Gates and Wood had made deeds in trust on real estate to indemnify him. As a further security against loss, his attorneys advised him not to satisfy the judgment and execution, but to go to Brinkley and purchase from him the judgment and execution that he might have the benefit of any lien or priority the execution might give him on the goods or real estate of his principals or co-

security.   This—at the time very commendable ad-
vice was put into action by Mosby, and he pur-
chased from Brinkley an assignment of the judg-
ment and execution, himself took control of it,
*voluntarily paid therefor the sum he might have other-
wise been compelled to pay and set to work* to collect
the same from his principals and the one-half from
his co-surety, Williams."

This is the statement of facts to support which
an affidavit of J. B. Heiskell, exhibiting the letter
of L. D. McKissick, one of the solicitors of Mosby,
was presented, which says that Mosby *paid* the
money to Brinkley upon an assignment as stated.

The returns on the execution were also referred
to, showing that it was run for the benefit of
Mosby.    In view of these statements in answer
to the affidavits of Mosby that he paid the money
it cannot be said that the *fact that Brinkley received
the money is in dispute.*    The only dispute was
whether the money was paid in satisfaction of the
judgment or upon a purchase thereof.

If these statements were inadvertantly made
under a misapprehension of the facts, of course
they might be retracted and the real facts pre-
sented to the Court, but until counsel undertake
to show that in reality the facts were different,
and the admission inadvertently made, we will
take the admission as true, especially when it is
so supported as to leave no reasonable doubt of
its truth.

The only question remaining, and the one al-

ready considered on the former hearing, is, whether, upon the facts stated, the assignment to Mosbey made it his judgment so that upon the reversal, the loss fell upon him. And, upon this question, after a careful consideration of the argument presented, we entertain no doubt whatever.

It is unnecessary to enquire whether, upon an out and out assignment, to a stranger, of a judgment, which is afterwards reversed, showing that it had no valid existence as a debt whatever, the assignee could have any remedy for the money paid, and under what circumstances, and to what extent such remedy would be allowed.

In this case, as we have already said, whatever may have been the form, the substance of the transaction was, that the money was paid to Brinkley, because he had the power to collect it. The form of an assignment was resorted to to give Mosby the advantage of the judgment, and execution against his principals and co-surety.

If it had been expressly agreed that Mosby was to take the risk of a reversal, the case would be different, but, under the facts of this case, and in the absence of such a stipulation, we do not hesitate to say that Mosby is entitled to the benefit of the reversal. After the payment of the money, he joined his principals in the prosecution of the writ of error against Brinkley, which is inconsistent with the assumption that he was in reality the owner of the judgment.

Brinkley has received the money to which, by

the judgment of Supreme Court, he was **not** entitled, and his executor must restore it, otherwise the judgement of that tribunal would be utterly disregarded.

The judgment of the law cannot be avoided by specious refinement; the substance must be enforced.

Petition dismissed.