## Moore *v.* Moore.

### (*Nashville.*    March  16,  1899.)

1. EVIDENCE.  *Of marriage.*

    No presumption of marriage arises from conduct otherwise af-
    fording plenary proof of marriage, when one of the parties
    is shown to have been obligated at the time by a prior legal
    and subsisting marriage. (*Post, pp. 150–154.*)

    Cases cited: Allen *v.* McCullough, 2 Heis., 185; 48 Md., 391.

2. HUSBAND AND WIFE.  *Divorce for illegal second marriage.*

    The provisions of Shannon's Code, § 4201. subsec. 2, that if either
    party has knowingly entered into a second marriage in viola-
    tion of a previous marriage still subsisting, "this shall be a
    sufficient cause for divorce from the bonds of matrimony," are
    intended for the relief of one who has innocently entered into
    an apparent second marriage rather than for the protection of
    the other spouse of the existing marriage, since the latter is
    adequately protected by subsec. 3, making adultery a ground
    of divorce. (*Post, pp. 154–156.*)

    Code construed: § 4201, subsecs. 2, 3 (S.); § 3306, subsecs. 2. 3 (M.
    & V.); § 2448, subsecs. 2, 3 (T. & S.).

    Cases cited and approved: 5 Ohio St., 32.

    Cited and disapproved: 15 Pa., 597.

3. SAME.  *Adulterer denied divorce.*

    A husband cannot obtain a divorce on the ground of adultery
    where the record convicts him of a violation of his own mar-
    riage vows. (*Post, p. 156.*)

    Code construed: § 4213 (S.); § 3318 (M. & V.); § 2460 (T. & S.).

---

FROM   ROBERTSON.

---

Appeal  from  Circuit  Court  of  Robertson  County.
A.  H.  MUNFORD,  J.

RUHM & SON, A. E. GARNER, A. J. CALDWELL, and H. C. CARTER for Complainant.

L. T. COBBS and FURLONG, WHITE & O'CONNELL for Defendant.

BEARD, J. This bill was filed by the complainant asking a decree of divorce from the defendant, his wife, upon two grounds, first, that she had committed adultery, and, second, that she had contracted a second marriage with one Frank Edwards, knowing at the time that her previous marriage with complainant was valid and subsisting.

The wife answered this bill, and, with other averments, stated that she had been abandoned by complainant when in an *enceinte* condition, resulting from her short association with him as his wife, and that after this, and when sick, penniless, and in the midst of strangers, her co-respondent, Edwards, befriended her, and that for several years thereafter they had lived together and she had borne him children; but she denied that she had contracted marriage with him, averring that their relations had always been meretricious.

In a cross bill filed by her she charged complainant with adultery, with abandonment, and a failure to support, and asked a decree of divorce from him as well as for alimony.

Upon the trial of the case, the Court below, declining to pass on the question of adultery upon the part of the defendant, granted to complainant a di-

vorce upon the ground that the defendant had know-
ingly entered into a second marriage after her mar-
riage with complainant, and dismissed the cross bill
of defendant.    From this decree Mrs. Moore has
appealed.

It is unnecessary for us to go into the details
of the evidence found in the large record.    In the
view we have taken of the case it is sufficient to
summarize it.

The complainant, while attending, as a student,
a medical school in Nashville, became acquainted
with the defendant, and, according to the testimony
of Mrs. Moore, this acquaintance soon ripened into
an engagement to marry at an indefinite day in the
future.    After a time complainant went to New York
for the purpose of finishing, in one of the schools
of that city, his professional studies.    While there
the defendant, who, in the meantime, had removed
to Chicago, joined him, as she alleges, upon his
earnest invitation, but, as he states, without sugges-
tion from him and most unexpectedly, when, after
a hasty interview, they were married.    This mar-
riage is characterized by complainant in his bill as
a piece of youthful folly on his part.

He admits, however, that though he parted com-
pany with the defendant immediately after the
marriage took place, yet he joined her in Chi-
cago a few months subsequently, and there, for sev-
eral days, cohabited with her at her father's home,
as his wife, and then, separating from her once

more, he joined her again in Chattanooga, where she had found employment, and there resumed marital relations, living with and openly claiming her as his wife. This lasted, however, but a little while, when he finally abandoned her, as we are satisfied this record clearly indicates, *enceinte* as the result of this last cohabitation.

As to the story of her own life from that time forward the defendant seems to make no concealment, but offers in extenuation for it the extreme suffering to which she avers. she was soon reduced by the abandonment of her husband at a time when she most needed his aid and comfort. She states in her deposition, as she had already done in her answer, that she was left without means by him, and that in a little while her physical condition rendered her helpless, and while thus situated in a strange land, she attracted the notice and sympathy of Edwards, who obtained a home for her, and with his means aided her through her period of confinement. Out of this, she confesses, there grew gratitude, affection on her part, followed by an illicit relation between herself and Edwards, which extended over a period of several years. During this relationship at least two children were born to these parties.

The record clearly shows that the defendant and Edwards traveled widely, and were domesticated at several places, and always claimed and were understood to be husband and wife. At the hotels they so registered themselves, and at a lying-in hospital

Moore *v.* Moore.

in the city of Philadelphia where, in anticipation of
the prospective birth of one of their children, Ed-
wards desired she should gain admission in order
that she might receive such attention as her condition
required, both of these parties assured the matron in
charge that they were married, and made exhibit of
a paper which they said was a marriage certificate,
it being necessary to admission that the woman
should be married. While admitting all these things to
be true, yet she and Edwards, in their depositions
deny with great emphasis that they were ever married.

No proof of an actual marriage between them
was attempted. The fact that such a marriage had
taken place was rested alone upon the presumption
of marriage arising from the facts just stated. It
is true, as has been heretofore set out, that these
two parties did state, when seeking admission for
Mrs. Moore to the hospital in Philadelphia, that
they were married, and much emphasis is laid on
this statement, but, as is said by the Lord Chan-
cellor in *Cunnigam* v. *Cunnigam*, 2 Dow, the value
of such statements depends on the circumstances under
which they were made, and we attach, in view of
the purpose and surroundings of these parties no
more importance to this claim of theirs than to the
fact that during the continuance of their relationship
they uniformly held themselves out to the world as
man and wife. And there is no doubt, if there had
been no proof of the previous legal marriage of
complainant and the defendant, that, as an independ-

ent fact, the evidence adduced in this cause would be ample upon which to rest a presumption of marriage between Mrs. Moore and Edwards. But will such evidence be sufficient where there is existing all the time a previous legal marriage?

We think certainly not.. Mr. Bishop, in his work on Marriage, Divorce and Separation, Vol. 1, Sec. 956, very clearly states the principle on which the presumption of marriage from such facts rests, in these words: "Every intendment of the law leans to matrimony, . . . it being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in form matrimonial should be such in fact. The law seizes upon all probabilities, and presses into its service all things else which can help it in each particular case to sustain the marriage and repel the conclusion of unlawful commerce." And again, in Section 959 the same author says: "Persons dwelling together in apparent matrimony are presumed, in the absence of any counter presumption or evidence special to the case, to be in fact married. The reason is that such is the common order of society, and that if the parties are not what they hold themselves out to be they would be living in constant violation of decency and law."

This being the philosophy of the law in indulging this presumption, why permit it in such a case as the present, where to do so will not repel the conclusion of "unlawful commerce," or relieve the

parties from the stigma of living in violation of law and decency? On the contrary, the indulgence of the presumption, in the face of the fact of her previous and still subsisting marriage to complainant, would be to make her guilty of the crime of bigamy. In such case there is no ground for a presumption of marriage; the second or last relation is simply illicit and nothing more. *Id.*, Vol. 1, Sec. 1029; *Jones* v. *Jones*, 48 Md., 391; *Allen* v. *McCullough*, 2 Heis., 185.

Not only in this was the trial Judge in error, but he also erred in his interpretation of the Subsec. 2 of the Sec. 4201 of the (Shannon's) Code, upon the authority of which he rested his decree. This subsection provides that if either party has knowingly entered into a second marriage in violation of a previous marriage still subsisting, "this shall be a cause for divorce from the bonds of matrimony." The trial Judge held that the purpose of this section was to give the party to the first marriage who is outraged by this second marriage, a new and independent ground for divorce. In the first place, it may be asked why give the aggrieved party to the first marriage this as a ground for divorce, when no ceremony, however solemn, can give the sanction of law to this new undertaking, but the parties to it begin and will continue to live in an illicit relation? The second marriage is void *ipso facto*, and the party to the first marriage who has entered into it is guilty of adultery no less than

if the relation had been confessedly meretricious from the beginning. This being so, the question naturally arises, when adultery is provided in the immediately succeeding subsection as a special ground for divorce, why should the Legislature also have made provision for it under the subsection we are now considering? We are satisfied that it has not done so, but that these subsections are intended to furnish grounds for divorce to two distinct classes of persons.

Adultery is an offense committed by one who is a party to a legal, subsisting marriage, and therefore is committed after the marriage relation is established. Subsection 3 provides this as a ground for divorce to the innocent party to this relation, who is aggrieved by the adulterous conduct of the other party, while Subsection 2 is intended for the relief of one who has innocently been unfortunate enough to have become entangled in an apparent marriage relation with another who has entered into the apparent second marriage knowing that his or her act was in violation of a previous marriage still subsisting. It is true this second marriage is void *ab initio*, yet it is of practical importance to the injured party that it should be judicially declared so; as a public record gives evidence of the marriage, it is desirable that one equally as public should contain the decree pronouncing its invalidity.

We have no doubt that this was the sole purpose of the Legislature in enacting this clause of the divorce law. In support of the contrary view our

Moore *v.* Moore.

attention has been called to the case of *Ralston* v. *Ralston*, 15 Pa. (Court Rep.), 597. In that case the Court had occasion to consider a statute of Pennsylvania somewhat similar in terms to ours on this point, and, largely as a matter of grammatical construction, reached a conclusion like that of the trial Judge in this case. The opinion in that case concedes, however, that the opposite view had widely obtained and had been ''at least generally acquiesced in.''

However it may be with the Pennsylvania statute, there are at least no terms in ours which involve any rule of interpretation which can serve to drive us away from what we believe is its natural and proper meaning. Outside of the case of *Ralston* v. *Ralston*, *supra*, we have found only one other where such a statutory provision as we are now considering has been the subject of judicial construction, and that is in the case of *Smith* v. *Smith*, 5 Ohio St., 32. In that case the Supreme Court of Ohio adopt the view we have undertaken to express.

This leaves complainant, then, resting his application for divorce alone on the ground of the adultery of his wife. On this ground he must fail. We think the record convicts him of a violation of his marriage vows. This is enough to bar him from relief on that ground. Code (S.), § 4213.

The cross bill of Mrs. Moore was properly dismissed; in all other respects the judgment of the Court below is reversed, and the bill of complainant is dismissed with costs of both Courts.