PEWITT *v.* PEWITT.

(*Jackson,* April Term, 1950)

Opinion filed March 9, 1951.

Rehearing denied June 16, 1951.

MARY GUIDI, of Memphis, for plaintiff in error.

H. L. FEIBELMAN, of Memphis for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The bill of Square Pewitt, as amended, sought a decree declaring him divorced from Martha Pewitt on the ground that at the time they went through the marriage ceremony in 1928 Martha was married to a man named Maclin. Martha's answer denied this allegation and further asserted that she and Pewitt have lived together for more than twenty years as husband and wife believing that they were lawfully married. This answer avers that if it is a fact that she and Maclin have not been divorced, nevertheless, this cohabitation and holding out by Pewitt for twenty years that he and she were married estops him from asserting the contrary. She filed a cross-bill charging desertion and cruelty, and therein sought an

award for permanent separate maintenance and title to the home which had been conveyed to them as tenants by the entirety.

It was established to the satisfaction of the Circuit Court that Martha was married to Maclin at the time she went through the marriage ceremony with Square Pewitt. Hence, in the opinion of that Court, this second attempted marriage was void from its inception; therefore, that the doctrine of estoppel did not apply, and that there is no legal basis for an award of alimony. Accordingly, Square Pewitt was granted a divorce, and Martha's cross-bill for alimony was dismissed.

It was the opinion of the Court of Appeals (1) (as we understand the opinion) that Pewitt had not established it to be a fact that Martha was not divorced from Maclin at the time she went through the marriage ceremony with Pewitt, and (2) that having lived with and held Martha out as his wife for twenty years Pewitt is now liable for alimony on the theory of estoppel if the charges of her cross-bill are established. Accordingly, the Court of Appeals reversed the decree of the Circuit Court, dismissed Pewitt's petition for divorce, and remanded the cause for proof upon her charge of desertion and cruelty.

Square Pewitt filed petition for certiorari. The writ was granted, and the questions have been orally argued.

At the trial Pewitt testified that about two years before he filed his divorce bill the respondent told him that she had never been divorced from Maclin, but that he did not then believe it. He says that she repeated it several times and finally he became convinced that it is true.

The proof clearly shows that Martha and Maclin were married in Fayette County, Tennessee in 1926 and that Maclin continued to live there from that date until after the subsequent marriage ceremony between Martha and

Pewitt in 1928, and thereafter until he was sent to the penitentiary about five years prior to the commencement of this suit with which we are here concerned. He was in the penitentiary at the time of this trial.

The respondent, Martha, separated from Maclin in Fayette County. She went to Shelby County where she continued to live until she and Pewitt went through the marriage ceremony in 1928.

The fact that a person formerly married was not divorced before purporting to marry another person is established, prima facie, by evidence that no divorce decree is disclosed by the records of the Courts having jurisdiction in any of the counties in which the parties, or either of them, to the first marriage resided from the time of that marriage through the time of the second attempted marriage of one of the parties to another person. *Gamble* v. *Rucker,* 124 Tenn. 415, 137 S. W. 499; *Payne* v. *Payne,* 142 Tenn. 320, 219 S. W. 4.

It was stipulated that the clerks of the Circuit and Chancery Courts of Shelby County were unable to find any record of divorce proceedings between Martha Maclin and her husband Richmond during the period in question. The respective clerks of the Circuit and Chancery Courts of Fayette County signed certificates as such clerks that each had in his office "searched the records of this office for a divorce case of Richmond Maclin or Mclin or Martha, his wife from 1925 to July 1928 and I do not find any such record in the above names". These dates cover the period between the Maclin wedding and the marriage ceremony between the Pewitts.

When Pewitt offered the certificates of these Clerks of Fayette County Circuit and Chancery Courts as evidence they were objected to by counsel for Martha on the ground that to admit them as evidence would be to de-

prive her of the right of cross-examination of these witnesses. However, the Trial Judge under the authority of Code Section 9752 admitted these two certificates as evidence. It was the opinion of the Court of Appeals that it was error to admit these certificates. That Court held that to so construe Code Section 9752 would be to deny to a litigant the right of cross-examination.

No doubt it was because of its opinion as to the construction of Section 9752 that the Court of Appeals concluded the evidence to be insufficient to establish it as a fact that Martha was not divorced from Maclin at the time she went through the marriage ceremony with Pewitt.

When Square Pewitt had concluded introduction of evidence the trial judge inquired of counsel for respondent, Martha Pewitt, as to whether he had any proof that would · overcome this proof of a previous subsisting marriage of Martha. After some remarks pro and con the following occurred:

"The Court: Mr. Fibelman, if these parties were never married and they could not have been as long as there was a prior subsisting marriage, then this court, in the opinion of the court, could not award this woman alimony.

"Mr. Fibelman: Your Honor, I am prepared to offer proof of his knowledge of the prior subsisting marriage and also they lived together for more than twenty years and held themselves out as man and wife. It is our theory that he is estopped from claiming there was a prior subsisting marriage.

"The Court: Does your client deny there was a prior subsisting marriage, Mr. Fibelman?

"Mr. Fibelman: No denial of that. We are proceeding on the theory of estoppel."

We think there is a strong possibility that the Court of Appeals inadvertently overlooked the above quoted statements in holding that it had not been established as a fact in the case that Martha was not divorced from Maclin at the time she attempted to marry Pewitt. However that may be, in our opinion, the above quoted statements can only be construed as an admission by Martha through her counsel that Martha was married to Maclin at the time she went through the marriage ceremony with Pewitt, and that Martha was predicating her entire case upon the theory of estoppel heretofore stated. This being true, it is unnecessary to consider Square Pewitt's insistence here that the Court of Appeals erred in holding incompetent the aforesaid certificates of the clerks of the Circuit and Chancery Courts of Fayette County. By the same token, it is also necessary to conclude, we think, that Square Pewitt did establish it as a fact in this case that Martha was married to Maclin at the time she went through the marriage ceremony with Pewitt.

In view of the fact that it was conceded by Martha that she was married to Maclin at the time she went through the marriage ceremony with Pewitt, and it being shown that Maclin is still living, it was the opinion of the Circuit Court that she would not be entitled to alimony from Square Pewitt even though she established her allegations of cruelty and desertion. Hence, the Circuit Court declined to permit her to introduce proof in support of these charges, it being the thought of the Circuit Court that such evidence is immaterial.

The facts alleged as constituting the cruelty and desertion charged are that Pewitt left Martha because he had become infatuated with another woman with whom it is

alleged on information and belief that he is living in adultery.

Assuming the truth of the above mentioned allegation in support of the charge of cruelty and desertion, then necessarily the first question for determination here is whether a man who has gone through a marriage ceremony with a woman who was married at the time of that ceremony, and whose husband is still living, is liable to pay this woman alimony because of the fact that this man and woman lived together as husband and wife and represented themselves as such to the public for twenty years after the performance of the marriage ceremony.

*Moore* v. *Moore,* 102 Tenn. 148, 154-155, 52 S. W. 778, 780, involved an alleged second marriage when one of the parties thereto was at that time married. Though there was no marriage ceremony, in fact, yet by way of dictum, the Court defined as follows the status which would be established between a man and woman who went through such a ceremony and lived together thereafter: ''no ceremony, however solemn, can give the sanction of law to this new undertaking, but the parties to it begin and will continue to live in an illicit relation? The second marriage is void ipso facto, and the party to the first marriage who has entered into it is guilty of adultery, no less than if the relation had been confessedly meretricious from the beginning.'' Apparently implicit in the above statement is the holding that a living together publicly as husband and wife subsequent to such a marriage ceremony will not have the effect of vesting either of the parties with the rights attendant upon a legal marital status.

The opinion of the Court of Appeals is a very learned, thoughtful and painstaking discussion of the question now being considered. However, as we construe that

opinion, it was very largely upon the authority of *Hale* v. *State,* 179 Tenn. 201, 164 S. W. (2d) 822, 823, that the Court of Appeals applied the theory of estoppel and held Pewitt liable for alimony if Martha sustained her charges of cruelty.

In *Hale* v. *State* the husband appealed from a conviction of nonsupport of his alleged wife. His defense was that they were not married because "the prosecutrix told him in California that her divorce decree had not been made final". They had lived in Tennessee a number of years thereafter as man and wife. In the Hale case this Court did discuss the presumption arising from the fact that they had lived here as man and wife for twelve years, and were accepted by the public as such. The theory of estoppel was quite favorably discussed in connection with that fact. However, the decision seems eventually to have been influenced by the fact that Hale had not established by a preponderance of the evidence on appeal that he was not the husband of the prosecutrix. The Court said this, 179 Tenn. on page 203, 164 S. W. (2d) on page 823, "The statements of the plaintiff in error are vague and indefinite, and plaintiff in error is in no position to assert now that he and prosecutrix were never legally married when for so many years he held her out as his wife and cohabited with her". And concluded the opinion with this statement: "We find that the plaintiff in error was not well supported by the proof, and having found no error in the record, the judgment of the lower court is affirmed."

We think that in considering the extent of the holding in *Hale* v. *State* the above quoted conclusion of the Court as to the facts must be taken into consideration. When this is done the case at bar does not appear to fall within the Hale case, since it was conceded at the hearing in

the case at bar that there was a prior subsisting marriage at the time Martha and Pewitt went through the marriage ceremony, and it is shown that this husband is still living.

Respondent, Martha, likewise relies upon *Johnson* v. *Johnson,* 41 Tenn. 626; *Smith* v. *North Memphis Sav. Bank,* 115 Tenn. 11, 89 S. W. 392; *Kinnard* v. *Tennessee Chemical Co.,* 157 Tenn. 206, 7 S. W. (2d) 807.

In the Johnson case, supra, the minister had performed the ceremony without the license. It was later procured. The parties lived together for years. The question involved was the validity of the sale of some slaves. The fact that this case is not controlling in the situation here is conclusively revealed by the observation of the Court in that case that the marriage "was only defective in wanting one or other of those formalities prescribed by statute, which were mainly designed to give notoriety and perpetuate the evidence of the marriage". 41 Tenn. at page 634. It will be noted that the parties in that case had the capacity *to enter into the contract of marriage.* Hence a subsequent valid marriage could be presumed by the fact that the parties had lived together as man and wife for so many years.

The man and woman involved in *Smith* v. *North Memphis Sav. Bank,* supra, *"both being capable to contract marriage,* mutually agreed to live together as man and wife", (emphasis supplied), and without license or ceremony began that relationship and continued it until his death twenty-five years later. While this constituted a common law marriage which is not recognized in this State, it was held that it was sufficient to estop the administrator from denying the rights of the woman as widow and distributee of the decedent. In that opinion the Court again restated the presumption of a subsequent

marriage by those parties, both of whom were capable of contracting marriage.

In *Kinnard* v. *Tennessee Chemical Co.,* supra, the parties had lived together as man and wife after the marriage ceremony for thirteen years and until his death. It then developed that he had never been divorced from a previous wife. The woman in the second marriage was seeking Workmen's Compensation under the statute by reason of his death as a result of an accident arising out of and in the course of his employment. She was allowed a recovery with the holding that *under the Workmen's Compensation Act, Code, Section 6851 et seq. dependency is the test.*

It is necessary to conclude that neither of the above mentioned cases relied upon by respondent is authority for the conclusion that a man is liable to pay alimony to a woman to whom he was never married and who did not have the capacity to enter into a marriage contract with him.

In seeking to find precedent upon the question of whether the doctrine of estoppel applies to an attempted marriage of the character we have here pertinent decisions would seem to be those where one of the parties to the marriage ceremony did not have the capacity to enter into the marriage contract.

With reference to the lack of capacity to enter into the marriage contract a bigamous marriage is on the same footing as a marriage in violation of Code Section 8452, wherein a person who has been divorced because of adultery is prohibited from marrying the person with whom the adultery was committed during the life of former spouse. In *Jennings* v. *Jennings*, 165 Tenn. 295, 54 S. W. (2d) 961, 962, that situation was before the Court, and the Court held this: "While this statute does

not expressly declare the prohibited marriage void, our decisions have treated such an attempted marriage as absolute nullity, open to collateral attack, apparently on the theory that, under the policy of this state, *the statutory inhibition goes to the capacity of the parties to marry.* Our cases have dealt with such unions as they have dealt with unions between negroes and whites, likewise prohibited by statute.'' (Emphasis supplied.) That case further held: ''No legal rights could grow out of such a union, and that the children of such union must be regarded as illegitimate.''

In *Bennett* v. *Anderson,* 20 Tenn. App. 523, at page 528, 101 S. W. (2d) 148, 150, (certiorari denied) it being a case in which the above mentioned adultery statute was involved, the Court said: ''The marriage being absolutely void and there being no presumption of marriage from the fact that they were living together as husband and wife, the question of estoppel has no application.''

In *Owen* v. *Bracket,* 75 Tenn. 448, this adultery statute was again involved. The woman in the case was denied homestead, the Court saying that such a holding ''accords with public policy, is predicated of common sense, and tends to assure a decent propagation of the human race''.

Aside from the legal incongruity created by requiring a man to pay alimony to a woman who was never his wife, the principle established by *Jennings* v. *Jennings, Bennett* v. *Anderson* and *Owen* v. *Bracket,* supra, is that the awarding of alimony to a woman in such status under the circumstances we have here is contrary to public policy.

Turning now to cases in which a bigamous marriage was involved, we have the case of *McKee* v. *Bevins,* 138 Tenn. 249, 197 S. W. 563. It was there held that the

woman in the case took as a tenant in common the property devised as tenants by the entirety to her and the man with whom she had entered into the bigamous relation.

In *Scurlock* v. *Scurlock,* 92 Tenn. 629, 22 S. W. 858, 859; 4 A. L. R. 931, the woman in the case was the wife of another man when she went through the marriage ceremony with the second man. With reference to her rights to alimony from this second man, the Court held: ''Having never sustained the legal relation of wife, she should not be entitled to any alimony based upon and growing out of that relation''.

The McKee and Scurlock cases, supra, are exactly in point and seem to make it imperative upon the Court to reject Martha's claim for alimony. The marriage ceremony through which she and Pewitt went was a nullity. Since she was incapable of entering into the marriage contract, the presumption of a subsequent valid marriage cannot be indulged. The relation between the parties continued to be an adulterous relation rather than a marital relation. The right to alimony arises out of the marital relation. *Swan* v. *Harrison,* 42 Tenn. 534, 543-544. That is its only foundation. 17 American Jurisprudence, page 413. For decisions from other jurisdictions on this point see cases annotated in Volumes 4 and 110 A. L. R. and 11 A. L. R. (2d) respectively, commencing at pages 931, 1290 and 1056, respectively.

Having determined that Martha is not entitled to a decree ordering Square Pewitt to pay her any alimony the final question for decision here is whether under Code Section 8426(2) Square Pewitt is entitled to a decree declaring him divorced from Martha.

Code Section 8426(2) provides that one of the ''causes of divorce'' shall be that ''either party has

knowingly entered into a second marriage, in violation of a previous marriage, still subsisting.'' If that second marriage, so called, ''is void ipso facto'', then the parties to it are not married regardless of whether there is a subsequent divorce granted.

*Moore* v. *Moore,* supra, recognized that situation in its discussion of this ground for divorce and held this: ''It is true, this second marriage is void ab initio, yet it is of practical importance to the injured party that it should be judicially declared so. As a public record gives evidence of the marriage, it is desirable that one equally public should contain the decree pronouncing its invalidity.'' [102 Tenn. 148, 52 S. W. 780.]

It is conceivable that the conduct of the unmarried party to a bigamous ceremony is so reprehensible as to justify the Court in withholding its aid to the efforts of such party to have the void ceremony judicially so declared. So, the question in this case is whether the misconduct of which Martha alleges Square Pewitt to be guilty is so reprehensible that we must hold the Court below to have exceeded its discretion in declaring through the instrumentality of granting a divorce to Square Pewitt that the attempted second marriage of Martha is of no validity.

The misconduct of which Martha alleges Pewitt to be guilty is in substance that while he was living in adultery with her he became infatuated with another woman and, therefore, left Martha. Whatever feeling such conduct may arouse, it must be recognized that Square Pewitt had a legal right to leave Martha, and both a legal and moral duty to end the adulterous relations with a woman who was without the capacity to contract a marriage with him. Under these circumstances we are not able to say that the Circuit Court abused its

discretion in granting Pewitt a divorce under the aforesaid Code Section 8426(2).

The judgment of the Court of Appeals will be reversed and the decree of the Circuit Court will be affirmed. All costs of appeal will be adjudged against the original defendant and cross-complainant known in this record as Martha Pewitt.

On Petition to Rehear

A petition to rehear has been filed by Martha Pewitt. Its first insistence is that there was no proof of a subsisting marriage between her and Maclin. She invokes Code Section 8437 wherein the Court in a divorce suit is required to hear proof notwithstanding a pro confesso or admission that the facts alleged are true.

Square Pewitt testified that about two years before he filed his divorce proceedings Martha commenced to assert that she and Maclin were not divorced, and he finally became convinced of the truth of the assertion. At an appropriate time during the course of the proceedings the Court asked the attorney for Martha Pewitt whether there was any denial as to this prior subsisting marriage. He replied that there is not; that "we are proceeding on the theory of estoppel". This Court considered the above testimony sufficient, but the petition to rehear says that there should not "be used against her what is nothing more than a courteous answer of petitioner's counsel to a direct question on the part of the Court".

The point made by the insistence just stated is that an 'admission of counsel in behalf of his client during the course of a trial is not evidence. We do not so understand the law. In *Gates* v. *Brinkley,* 72 Tenn. 710, 714, 715, the Court said: "We do not see, however, why there may not be other modes of ascertaining the fact as conclusive as the return of an execution satisfied. As,

for instance, the admission of the parties by themselves or their counsel.—We accepted their statement of the facts to be entirely correct, and for that reason did not deem it necessary to require other evidence.''

Aside from the code section invoked being fully complied with in fact by the evidence stated, there is likewise a compliance with its intent, to wit, to avoid collusion. This spirited petition to rehear is quite conclusive of the fact that this case is far removed from anything that smacks of collusion.

The further and last insistence in substance of the petition to rehear may be stated by this quotation from that petition: ''Petitioner is the wife of Square Pewitt because of a lawful marriage, but even more so because he cannot deny it. Have your Honors considered this point we respectfully ask? Please consider that Square Pewitt is estopped to deny the validity of his marriage.''

The insistences just stated were the exact questions decided in the rather lengthy opinion now under attack. The argument in the petition to rehear in support of these insistences is in fact a re-argument of that which already has been so well said by counsel for Martha Pewitt. Moreover, anything which we might say in response to this repetition only would be likewise a repetition upon our part of that previously stated and could, therefore, serve no useful purpose.

The petition to rehear seems to overlook the distinction made, on the one hand, between marriage not entered into in the manner required by law between parties *capable of entering into the marriage contract,* and, on the other hand, such marriage ceremonies between parties, one or both of whom were incapable of entering into such contract. As pointed out in our opinion, in the first class of cases where the parties have lived together

for a number of years as man and wife, the Court presumes a subsequent marriage, in accordance with the policy of the law to protect marriage with every presumption of legality. That point is made in practically every case to which petitioner refers in his petition to rehear; and that distinction is emphasized in our original opinion with reference to these very cases.

On the other hand, as pointed out in the opinion now under attack, and by quotations therein from these cases, such a presumption is not and cannot be indulged in those cases where either of the parties was incapable of entering into the second marriage.

The only new authorities mentioned in the petition to rehear are *Diehl* v. *Jones,* 170 Tenn. 217, 94 S. W. (2d) 47, and *Duggan* v. *Ogle,* 25 Tenn. App. 467, 159 S. W. (2d) 834. Upon further reflection counsel will see that those cases have no application to the question with which we were dealing. They involved only the legitimacy of children by reason of Code Section 8453, as amended by the 1932 Code. There are no children involved in the case at bar.

The conclusion which this Court reached, borrowing an expression used by this Court in a recent case, "is not so much the will of the Court, as it is the will of the law"; and so, with reference to the earnest appeal as to equity, we can only respond that "equity follows the law". "Where there is no legal liability, equity can create none". *Henderson* v. *Overton,* 10 Tenn. 394, 397. Equity cannot apply a remedy where there is no right. *Vanderbilt University* v. *Williams,* 152 Tenn. 664, 674, 280 S. W. 689.

The petition to rehear is denied.

All concur.