## WILLIAM H. GRAY *v.* JOSEPH C. PALMER *et als.*

WHEN JUDGMENT BECOMES FINAL.—When an order for judgment has been made and regularly entered by the Clerk in the minutes of the Court, and the judgment has been drawn up in form, signed by the Judge, and filed with the Clerk, final judgment has been rendered within the meaning of the terms "rendition of the judgment," as used in section three hundred thirty-six of the Practice Act, and the time for taking an appeal commences to run.

ENTRY OF JUDGMENT BY CLERK.—The entry of such judgment in the Judgment Book is a mere ministerial duty to be performed by the Clerk.

TIME WITHIN WHICH APPEAL MUST BE TAKEN.—An appeal from a judgment must be taken within one year from the time of its rendition. The failure of the Clerk to enter the judgment in the Judgment Book at the time it is rendered, cannot extend the time within which to appeal.

SAME.—The question whether an appeal from a judgment should not be taken within one year from the time when the order for judgment is made and entered in the minutes of the Court, discussed.

APPEALS FROM ORDERS.—The questions discussed in the opinion as to the time within which appeals must be taken from various orders.

WHEN EXECUTION MAY BE ISSUED.—The question discussed in the opinion as to the time when an execution can be issued on a judgment.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Plaintiff appealed from the judgment.

The facts of this case will be found reported in 9 Cal. 616.

*J. B. Crockett,* for Appellant.

*W. W. Crane, Jr., Philip G. Galpin,* and *H. & C. McAl-lister,* for Respondents.

By the Court, SAWYER, J.

The appeal in this cause was dismissed by the late Supreme Court, on the ground that it was not taken in time. Upon application of appellant's counsel, in which, in view of the supposed importance of the question decided, a large number of the attorneys of this Court not of counsel in the case united, the same Court granted a rehearing.

Upon a former appeal the judgment of the District Court had been reversed, and the cause remanded for further proceedings. The remittitur having been filed in the District Court, the defendant's counsel moved to dismiss the suit on the ground, that the decision of the Supreme Court was a final adjudication against the plaintiff of all the matters in litigation in the cause, and that such judgment of dismissal would be in pursuance of the mandate of that Court. After consideration the District Court sustained the motion, and on the 6th of April, 1861, by its direction an order was entered in the minutes of the Court dismissing the action, and directing a judgment to be entered accordingly. On the same day a bill of exceptions was prepared by appellant's counsel, settled by the Judge, and filed. On the 9th of April, 1861, a formal judgment was drawn up in pursuance of the order entered in the minutes on the sixth, signed by the Judge, and filed in the case. On the 17th of June, 1861, and not before, the judgment thus signed and filed on the 9th of April, was entered by the Clerk in the "Judgment Book." On the 14th of June, 1862, this appeal was taken.

Section three hundred thirty-six of the Practice Act authorizes an appeal to be taken from a final judgment "within one year after the rendition of the judgment." If the judgment is to be regarded as having been rendered on the 17th of June—the time when it was entered in the Judgment Book—within the meaning of the Act, the appeal is in time. But if the 6th of April—when the order for judgment was announced and entered on the minutes of the Court—or the 9th of April—when a formal judgment was signed and filed

in the case—is to be regarded as the date of the rendition of the judgment, then the appeal was too late, and it must be dismissed.

The decision must turn upon the construction to be given to the statute. The words, "rendered," and "rendition," and the word "entered," are frequently used in the Practice Act, and in no instance does the latter word appear to us to be used in the same sense as either of the former. Thus, in section one hundred seventy-five, it is provided that the jury, in certain cases, "may render a general or special verdict," and that "the special verdict or finding shall be filed with the Clerk and entered upon the minutes." Of course the rendition of the verdict is something different from the filing or the entry, and must precede both. So in section one hundred ninety-five, notice of intention to move for a new trial must be given "within five days after the rendition of the verdict," or "ten days after receiving written notice of the rendering of the decision of the Judge"—not the entry of the decision. So section one hundred ninety-seven provides that "judgment shall be entered by the Clerk within twenty-four hours after the rendition of the verdict, unless," etc. Section two hundred and one requires the Clerk to keep a "book for the entry of judgments, to be called the 'Judgment Book,' in which each judgment shall be entered," etc. But the entry of a judgment in the Judgment Book presupposes the existence of a judgment rendered, or pronounced, to be entered. The Court renders the judgment, and the Clerk enters it. "After the entry of the judgment," the Clerk is to make up a judgment roll (Section 203,) and "after filing the judgment roll" he is to docket the judgment, and from the time of docketing the judgment becomes a lien upon real estate.

"The party in whose favor judgment is given may at any time within five years after the entry thereof issue a writ of execution," etc. (Sec. 209.) Although judgment may have been given or rendered, execution cannot issue until it is entered, and although so far perfected as to authorize execution, it does not even then become a lien upon real estate

until docketed. We now come to section three hundred thirty-six, which provides that " an appeal may be taken :

" First—From a final judgment in an action, or special proceeding commenced in the Court in which the judgment is rendered within one year after the rendition of the judgment.

" Second—From a judgment rendered on an appeal from an inferior Court within ninety days after the rendition of the judgment."

Third—From certain orders specified "within sixty days after the order is made and entered in the minutes of the Court." In this last class of cases there is a marked change in the language. In the case of appeal from an order the time commences to run, not from the making of the order, but from the time when it is " entered in the minutes of the Court." If the construction claimed by appellant for the word rendition is to prevail, the third clause of section three hundred thirty-six might just as well have ended with the word "made," and the phrase "entered in the minutes of the Court" has no office to perform, and means nothing. But we are not to presume that the Legislature intended nothing by this change of phraseology. It evidently was designed to add something to the idea already expressed by the word " made." Section three hundred thirty-eight authorizes a party who desires " a statement of the case to be annexed to the record of the judgment or order," to prepare such statement " within twenty days after the entry of such judgment or order." After a careful review of these and other sections of the Practice Act we cannot resist the conclusion that the terms " rendition " and " entry," are used in different senses, and to express the idea appropriate to those words respectively ; and that there is a rendition of a judgment before it is actually entered in the Judgment Book. Different stages of the proceeding are recognized by the statute as initial points from which other proceedings may be taken, or other rights acquired. Thus the right of appeal attaches, and time for taking it commences to run from the rendition of the judgment by the Court ; the right to issue execution from the time of the entry of the judg-

ment rendered; and the judgment lien upon real estate attaches from the docketing of the judgment rendered and entered.

We do not perceive that any argument can be drawn against this construction from the provisions of sections five hundred ten and five hundred eleven. Section five hundred ten simply allows two days to the prevailing party to file his bill of costs. Section five hundred eleven directs the Clerk to "include in the judgment entered up by him any interest on the verdict or decision of the Court from the time it (the verdict or decision, not the judgment) was rendered or made, and the costs, if the same have been taxed or ascertained." (If—as appellant seems to suppose—the words, "it was rendered," refer to the judgment, then we have in this section an express recognition of the distinction between the rendition and the entry of a judgment; for the Clerk is to "include in the judgment entered up by him any interest * * * from the time it was rendered." Of course, if the judgment is not to be regarded as rendered till it is entered, no interest could accrue between the rendition and the entry of the judgment.) In case the costs are not taxed, or ascertained, it directs the Clerk, within two days after they are taxed or ascertained, to "insert the same in a blank, left in the judgment for that purpose." The judgment is not always rendered immediately after the rendition of the verdict, or even after the finding of facts by the Judge or referee has been filed. A special verdict is sometimes returned in pursuance of section one hundred seventy-five. In such case, it not unfrequently happens, that the question as to what judgment shall be rendered on the verdict is reserved for argument, or for further consideration, as provided in sections one hundred seventy-eight, one hundred ninety-seven and one hundred ninety-eight. So, after the facts have been found by the Court or referee, the same course may often be pursued. It thus not unfrequently happens, that the judgment is not rendered for several months after the rendition of the verdict, or filing of the findings of facts. Doubtless such cases were intended to be provided for by section five hundred eleven, which authorizes the interest to be included down to the ren-

dition of the judgment. The argument of appellant, based upon this section, is just as cogent against considering the time for taking the appeal to commence from the entry as from the rendition of the judgment, as that term is construed by us. For the costs are to be inserted in a blank left for the purpose in the judgment actually entered. And when there is a contest in the taxation of costs, the contest may not be settled and the costs ascertained for months after the entry of the judgment, and of course the amount could not be known, and the appellant could not determine whether he wished to review that part of the judgment until these facts are ascertained.

Upon the construction given by us there are not two final judgments—as is argued by appellant. The Clerk enters the judgment rendered by the Court. The Court pronounces the judgment, and the Clerk performs the ministerial duty of entering it. The judgment rendered is the judgment entered.

We have thus far endeavored to solve the question by a careful examination and comparison of the various provisions of the statute, under the test of the ordinary rules of construction.

Upon examination of such decisions as we have been able to discover upon similar language in other statutes, we find that our construction is also sustained by authority. Section twenty-one, Chapter nine, of the Revised Statutes of New York (Ed. of 1836), marg. p. five hundred ninety-four, is as follows:

Sec. 21. "All writs of error upon any judgment or final determination rendered in any cause, in any Court of law and of record in this State, shall be brought within two years after the rendering of such judgment or final determination, and not after; except in the cases specified in the next two sections."

In *Fleet* v. *Youngs*, 11 Wend. 527, there was a motion to dismiss the writ of error. The second ground of the motion was, in the language of the Chancellor: "The omission to bring the writ of error within two years after the actual rendition of the judgment in the Supreme Court;" and the solution of the question depended upon the signification to be

given to the words, "rendering of such judgment." In deciding the point the Chancellor said (527): "By the English Statute of Limitations as to writs of error, the plaintiff was required to sue out his writ within twenty years after the judgment was signed or entered of record, with the usual saving in favor of infants, etc. But in the former revision of the laws in this State, the language of the statute, as well as the time of the limitation, was changed. The period of limitation was reduced to five years, without any exception in favor of infants, *feme coverts*, etc.; and the statute required the writ of error to be brought within five years after the rendition of the judgment, instead of directing the time for suing out the writ of error to commence from the signing or entering the judgment on record as in the English statute. The language of the statute, as contained in the recent revisions, is, that the writ of error shall be brought within two years after the rendering of the judgment or final determination of the Court, and not after; with an exception in favor of infants, lunatics, etc., for a further time, not exceeding five years from the time of rendering the judgment. I am at a loss to account for this change in language from the English statute, except upon the supposition that the Legislature intended the statute should commence running from the time the judgment was actually given, which seems to be the natural meaning of the expression—within two years after the rendering of such judgment or final determination."

Senator Tracy also said (528): "It strikes me that the more obvious and natural import of the expression 'rendering of such judgment,' is the annunciation or declaring the decision of the Court indicated by the rule for judgment; and this construction is fortified by the fact that our statute varies in its expression from the English statute which refers in terms to the filing of the judgment record."

A similar question arose upon the same statutory provision in *Lee* v. *Tillotson*, 4 Hill, 29, in which the same construction was given to the statute. Mr. Justice Bronson said: "The judgment or final determination in the cause was rendered in

July, 1840, when the motion which had been made to set aside the report of the referees was denied.   The record which was afterwards filed was not the judgment, but only a written memorial of the judgment which had been previously rendered."

The only difference between .the language of the New York Act here construed and our own, is, the former has the word " rendering," and the latter "rendition," words of precisely equivalent import in the connection in which they stand.

In this case the judgment announced was not only " indicated by the rule (order) for judgment actually entered in the minutes of the Court on the sixth, but it was drawn up in form in the precise terms in which it was to be entered, signed by the Judge and filed in the cause on the 9th of April.   It was the judgment of the Court.   Nothing remained to be done but the mere ministerial duty to be performed by the Clerk of copying it into the record.   At that date, at least, the judgment had been rendered.

Possibly, the formal judgment thus signed and filed may be regarded in legal contemplation as having been entered from the time of the filing.   Such was the rule in the old chancery practice.   (*Gay* v. *Gay*, 10 Paige, 375 ; 1 Barb. Ch. Pr. 341.) But it is unnecessary to determine that question now.   We are of the opinion that there was a "rendition of the judgment" within the meaning of section three hundred thirty-six of the Practice Act as early, at least, as the 9th of April. This being the case the appeal was not taken in time.

Appeal dismissed.