LUCINDA GAMBLE *et al.* v. CLARY RUCKER *et al.*

(*Jackson.* April Term, 1911.)

1. MARRIAGE. Regularly solemnized is presumed to be valid; burden to show contrary.

The law presumes that a marriage regularly solemnized is valid, and casts upon those asserting its invalidity the burden of showing the same; and this is true when it is asserted against such marriage that it was entered into during a valid prior marriage. (*Post,* p. 417.)

2. SAME. Presumption of validity of a second marriage when property rights are inolved, and presumption of dissolution of former marriage by divorce; burden to show no divorce.

If the former spouse of one subsequently married be living at the time of the subsequent marriage, the law presumes, in cases involving the settlement of property rights, that one or the other party to the former marriage had procured a divorce before the second marriage was entered into; and the burden is upon the person attacking the validity of such subsequent marriage to show that there was no such divorce. (*Post,* p. 417.)

3. SAME. Absence of divorce may be proved from court records, by direct evidence, or by circumstances.

The fact that parties formerly married were not divorced before one of them remarried may be proved by evidence that the court records where the divorce decree or judgment should be found show no divorce; and the fact may also be shown by other direct evidence, or by circumstances. (*Post,* p. 417.)

4. SAME. Presumption in favor of the validity of marriage; and character of evidence to overcome such presumption.

The presumption in favor of the validity of marriage is very strong, and the pressure of that presumption is felt at every

Gamble v. Rucker.

stage of the inquiry; and evidence that a divorce was not obtained before a second marriage was entered into by a party to a former marriage must be cogent and convincing to overcome the validity of the second marriage. (*Post, pp.* 417, 418.)

Numerous cases in other States are cited on page 418 of the opinion.

5. SAME. Evidence held to be insufficient to rebut presumption of divorce before a second marriage.

The evidence in the case is stated, reviewed, and held to be insufficient to rebut the presumption that a divorce was obtained before the husband married another woman. (*Post, pp.* 418-420.)

---

FROM LAUDERDALE.

---

Appeal from the Chancery Court of Lauderdale County.—JNO. S. COOPER, Chancellor.

W. S. LYNN, for complainants.

MCKINNEY & PIERSON, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill was filed by the children of Sam Rucker (colored), deceased, born by his first wife, Martha, against Clary Rucker, the wife of a second marriage, now his widow, and the children of that marriage. It was alleged that the second marriage was void, because made during the lifetime of the first wife. The complainants therefore claim the land of their deceased father as his only

Gamble v. Rucker.

heirs at law.    The defendants deny that Sam Rucker was ever married to the mother of complainants, and insist that defendant Clary was the only wife that Sam Rucker ever had.    We think the weight of the evidence is that the deceased was lawfully married to Martha Rucker.    The only question left is whether Sam and Martha had been divorced before he intermarried with Clary.    Martha was still living at the date of the second marriage.

The rule upon this subject is that, where a marriage has been regularly solemnized, the law will presume that it was valid, and will cast upon those asserting its invalidity the burden of showing the fact.    This is true when it is asserted against such marriage that it was entered into pending a valid prior marriage.    If the former spouse be living, the law, in cases involving the settlement of property rights, will presume that one or the other party to the former marriage had procured a divorce before the second marriage was entered into.    The burden is upon the person attacking the validity of such marriage to show that there was no such divorce.    This may be shown, and generally should be shown, by evidence that the records of the courts had been searched where such divorce decree or judgment should be found, if in existence at all, and that they show no such entry. The fact may also be shown by other direct evidence, and by circumstances; but the evidence should be cogent and convincing, since, in the interest of social order, the presumption in favor of marriage is very strong, and the pressure of that presumption is left at every

124 Tenn.—27

stage of the inquiry. 1 Bishop, Mar. & Div., section 457; *Megginson* v. *Megginson,* 21 Or., 387, 28 Pac., 388, 14 L. R. A., 540, and note; *Smith* v. *Fuller,* 138 Iowa 91, 115. N. W., 912, 16 L. R. A. (N. S.), 98, and note; *Sloan* v. *West,* 50 Wash., 86, 96 Pac., 684, 17 L. R. A. (N. S.); 960. And see, *Scott's Adm'r* v. *Scott* (Ky.), 77 S. W., 1122; *Bouldin* v. *McIntire,* 119 Ind., 574, 21 N. E., 445, 12 Am. St. Rep., 453; *Parsons* v. *Grand Lodge A. O. U. W.,* 108 Iowa, 6, 28 N. W., 676; *Alabama & V. Ry. Co.* v. *Beardsley* 79 Miss., 417, 30 South., 660, 89 Am. St. Rep., 660; *Potter* v. *Clapp,* 203 Ill., 592, 68 N. E., 81, 96 Am. St. Rep., 322; *In re Rash's Estate,* 21 Mont., 170, 53 Pac., 312, 69 Am. St. Rep., 649; *In re Thewlis' Estate,* 217 Pa., 307, 66 Atl., 519; *Lyon* v. *Lash,* 79 Kan., 342, 99 Pac., 598; *Maier* v. *Brock,* 222 Mo., 74, 120 S. W., 1167, 133 Am. St., Rep., 513; *Wingo* v. *Rudder* (Tex. Civ. App.), 120 S. W., 1073.

There is no testimony in this case that the court records of Lauderdale county, where Sam Rucker and Martha, his former wife, resided until they died, had been searched to ascertain whether they contained anything concerning a divorce between these parties. The only evidence relied upon to rebut the presumption of a divorce is that Martha was residing with Sam at the time the marriage with Clary was entered into; that, while she was aware of the wedding ceremony at the time it was performed between Sam and Clary in front of the porch, she did not actually go out and hear or see the ceremony; that, while the marriage was in progress, she

said to some one in the room where she was sitting that
Sam did not take another woman until she was old; that
afterwards she was seen to shed tears on one occasion,
and it was supposed by the witness that she was crying
because her husband had married Clary; and that she
died a year or two later.  As against this evidence it is
shown that Sam had been living with Clary as his wife
for eight or ten years prior to this time, during which
period eight children were born to them; that Clary lived
in a room across the hall from Martha; that Sam
had several other women on his place, with whom he co-
habitated for a series of years; that Martha cooked for
him, and all the other women worked the land for him;
that during this period he stated that he was not mar-
ried.  There is no evidence that Martha ever complained
of his relations with Clary, or with the other women
located on his place.  Clary testified that when the sub-
ject of her marriage with Sam was broached, Martha said
it was time he was marrying some one.  It is shown that
the relations of Sam with Clary caused the church of
which he was a member to make complaint to him, and
to threaten him with discipline.  A committee was ap-
pointed to call upon him, and state that he must either
marry Clary or cease his relations with her.  He first
replied that the church had nothing to do with his man-
ner of living, but finally yielded this view, and consented
to marry Clary, and he finally did so.  The wedding took
place, as already stated, in front of his porch, on which
occasion another colored couple was married.  During

the controversy in the church arising out of Sam's manner of living, no suggestion seems to have been made that he already had a wife. It seems to have been understood, in fact, that he had no wife, but that he was living with five or six women as his concubines, including Martha and Clary. Taking all this evidence together, we do not think that the presumption is rebutted that a divorce had taken place between Sam and Martha before the second marriage was entered into.

It results that both marriages were legal, and the children of both are legitimate; that Clary, as the widow, is entitled to homestead and dower, and the children born of the two marriages are entitled to the land, subject to the widow's rights.

A decree will be entered, adjusting the rights of the parties on this basis, and remanding the cause to the court below for further proceedings.

The costs of this court will be borne equally by the two sets of heirs. The costs of the court below will be disposed of as may be hereafter decreed by the chancellor.