WILLIAM RUTLEDGE, Plaintiff-in-Error, v. MAU-
DELL RUTLEDGE, Defendant-in-Error. —293 S. W.
(2d) 21.

Western Section, Jackson. October 7, 1953.

Petition for Certiorari denied by Supreme Court February 11, 1954.

Second Petition for Certiorari rehearing denied May 21, 1954.

See also Tenn., 281 S. W. (2d) 666.

Mary Guidi, Memphis, for plaintiff in error.

Irving Strauch, Memphis, for defendant in error.

AVERY, J.   This is a suit in which the original complainant, Maudell Rutledge, the defendant-in-error here,

was granted a divorce in the Circuit Court of Shelby County, John W. Wilson, Judge, presiding. As alimony, she was decreed absolute interest in a house and lot in the city of Memphis, valued at approximately $4,000, and given a judgment for an additional $75 to be applied to the fee for services of her attorney. The property had been conveyed to both parties in 1945.

It is necessary to have a clear view of the pleadings in this case so that we will be able to properly view the status existing in the Court at the moment of the hearing.

On August 15, 1952 Maudell Rutledge filed an original bill against William Rutledge seeking a divorce and certain injunctive relief and alimony. The statutory grounds of cruel and inhuman treatment, abandonment and nonsupport were minutely set out, and the bill further revealed the fact that the defendant had been guilty of such treatment prior to that alleged in the present bill, that the defendant had tried to kill complainant with a gun, and otherwise mistreated her in 1945, and on being arrested and put in jail he made such importuning promises that she forgave him and took him back. He did not keep his promises but continued his cruel treatment and the bill alleges the final acts of cruelty, before the filing of this bill to have occurred in February of 1952. She sought alimony and legally described a house and lot where they lived in Memphis owned by them and in view of threats made to burn the building by the defendant, she sought injunctive relief to prevent him from coming about the house molesting and disturbing her. The bill alleged that the parties were married in April of 1940 in Marion, Arkansas and final separation occurred Feb-

ruary 26, 1952 in Shelby County, Tennessee. No children were born to this union.

On August 21, 1952 the Divorce Proctor for Shelby County filed the usual formal answer.

On October 11, 1952 the defendant William Rutledge filed his answer by which he denied that they were married in Marion, Arkansas in April 1940 and denied that they were separated on February 26, 1952 in Memphis and further denied every allegation of cruel and inhuman treatment, abandonment and neglect to provide.

On October 31, 1952, on motion by complainant for alimony and attorneys fees, the defendant was ordered to pay complainant's solicitor a temporary fee of $50.

On March 12, 1953, upon motion of defendant, he was granted leave to file a cross-bill and on that date he did file a cross-bill in which he averred that he was married to one Evelyn Marks Rutledge in 1922 in the State of Mississippi by which marriage he had a son; that there was a separation and that his first wife married again in Mississippi without obtaining a divorce; that he had never obtained a divorce from her and that because of that former marriage never having been legally dissolved, his marriage to Maudell Rutledge was void and that she had no interest whatever in the property described in her original bill. His prayer was for process and for a decree annulling and holding void ab initio his attempted marriage to Maudell Rutledge.

On March 13, 1953 original complainant filed her answer to the cross-bill by which she neither admitted or denied the facts alleged in the cross-bill but demanded strict proof thereof if her rights were to be involved.

On May 18, 1953 an order was entered by Judge Wilson in which it is recited that the Court had ''heretofore ordered that the complainant's original bill be amended to allege the date of the separation as August 15, 1952; and that the complainant's bill allege as an additional ground for divorce that the defendant William Rutledge has knowingly entered into another marriage, in violation of a previous marriage, still *subsiting''* and complainant moved the Court to be permitted to make oath to her amended bill.

On March 25, 1953 original complainant amended her bill so as to allege that defendant had knowingly entered into the marriage to her in violation of the previous marriage, as additional ground for her divorce.

A jury had been called for by the defendant but by consent the jury was waived and the case was heard before the Court on oral testimony. The Court granted complainant an absolute divorce on June 23, 1953 on the grounds of cruel and inhuman treatment and abandonment. He granted the complainant alimony by divesting all of the title and interest of the defendant in the house and lot, and the furniture in the house, and vesting the absolute title to the real estate and furniture in the original complainant. The Court further gave judgment against the defendant for an additional $75 for the services of complainant's attorney.

Defendant preserved his exceptions to the judgment of the Court and prayed an appeal to this Court, all of which was granted upon his execution of a cost bond as required by law and was allowed thirty days in which to file a bill of exceptions.

The cost bond was properly executed but no bill of exceptions was filed and the record in this Court stands

upon the finding of facts requested, and as found by the trial court, which is included in the transcript of the technical record.

With the record in the condition shown, the plaintiff-in-error has assigned what is designated as five assignments of error. The first of these assigned errors is as follows:

"The judgment and decree of the trial court is contrary to the law and evidence in this case."

■ This assignment cannot be considered because it nowhere points out how the judgment and decree is contrary to either the law or the evidence in the case, and while this opinion will deal somewhat in connection with both the law and the evidence, as we consider some of the other assignments of error, this first assignment does not comply with the rules of the Court expressed in Rule No. 14, Secs. 2 and 3, and is for that and other reasons to be revealed in this opinion, overruled and disallowed.

Assignment of error No. II is as follows:

"There is in this case no evidence to sustain the judgment and decree of the trial court."

■ This assignment cannot be considered because the evidence was not preserved by a bill of exceptions, and is not now before this Court. It is accordingly overruled and disallowed. Code Section 10622, Court Rule 14, Secs. 2 and 3; Code Section 8811, Goodman v. Goodman, 127 Tenn. 501, 155 S. W. 388; Minton v. Wilkerson, 133 Tenn. 484, 182 S. W. 238.

Assignment of error No. III is as follows:

"The trial court erred in adjudging and decreeing to the appellee Maudell Rutledge a divorce on the

statutory grounds: Abandonment and non-support, cruel and inhuman treatment.''

There is an explanation of why the action of the court in granting a divorce to Maudell Rutledge is error. In short it is said to be error because the pleading, evidence and the entire record conclusively prove that prior to the attempted marriage of the parties, the defendant William Rutledge in 1922 had entered into marriage with Evelana (Evelene) Marks Rutledge; that this previous marriage had not been dissolved and that the attempted marriage of appellant and appellee is void ab initio and being so void no divorce could be predicated on such marriage, and that the grounds of cruel and inhuman treatment, and abandonment and non-support authorizing a legal divorce contemplated a valid and legal marital relationship.

The IV assignment of error is as follows:

''The trial court erred in granting and decreeing the appellee Maudell Rutledge award of alimony, including counsel fee in the additional sum of $75.''

The specified grounds of this assignment, as error, are the same with respect to alimony as above stated in connection with assignment of error No. ''III'' relating to divorce.

The V assignment of error is as follows:

''The trial court erred in dismissing the cross-bill of the appellant William Rutledge, in refusing to decree or declare as void ab initio the alleged marriage of appellant and appellee.''

The reasons assigned for this error are the same, in principle, as the reasons assigned for Nos. III and IV above.

For the sake of brevity, and because of the fact that the errors assigned by each of the three last assignments are substantially the same, they will be considered together in this opinion.

The trial court prepared and filed a very full, forceful and explanatory finding of facts. Such being in the record, unless the court has gone astray in the application of law to the facts found, there can be no reversal of his judgment. This being true, we think it proper to quote, at length, from the finding of facts by the trial court. This finding of facts begins with the following statement:

"This is a divorce action and counsel for the defendant has requested a written finding of facts and conclusions of law."

Then there is set out a summary of the original bill, the orders made prior to the hearing, the amendments, the answer, the cross-bill and the several steps taken in the case, together with the dates of the same. These are not copied because they are outlined above in this opinion. Thereafter the trial court continues:

"The Court assumes from the statements of counsel for the defendant and cross-complainant made at the bar in the course of the trial that no detailed finding is desired as to the facts of cruelty and abandonment made in the original bill before amended. The Court, however, finds that all of the acts complained of in the Original Bill have been well established by the testimony of the complainant, Maudell Rutledge and her witnesses Hattie Mann and Chester Moore. The defendant did not deny or in any manner controvert the testimony of the

complainant and her witnesses that the defendant forcibly and under threat of violence drove the complainant from their home and has not contributed to her support since. The defendant rests his case entirely upon the theory that there is no marriage.

"The parties were married in Marion, Arkansas while both resided in DeSoto County, Mississippi, returning to DeSoto County, immediately after the marriage; they resided in DeSoto County, Mississippi, until 1942, when the parties established their residence in Memphis and have resided in Memphis since, the residence at the time of the separation in August 1952 being at 855 N. Claybrook Street in the home which was conveyed to them as tenants by the entirety upon the purchase of same in 1945.

"The defendant William Rutledge prior to his marriage to complainant was married to Evalene Marks Rutledge on June 27, 1922. The defendant's testimony as to this prior marriage is substantiated by a duly authenticated copy of the marriage records of the Circuit Court Clerk's office of Tunica County, Mississippi. There was one child born of this marriage, who, according to the testimony of defendant, now resides with his mother, (Evelene Marks Rutledge) in Tunica County, Mississippi. William Rutledge and Evilene Rutledge lived together approximately one year and have been separated since according to the testimony of defendant."

There is then set out in the finding of facts the testimony with respect to the particular issues and more specific the findings of the court from the testimony of William Rutledge, the plaintiff-in-error, and a recitation

that counsel for each of the parties had advised the court that the Chancery Courts in the State of Mississippi have exclusive jurisdiction in divorce actions. It recites that the defendant and cross-complainant had lived continuously in DeSoto County, Mississippi from the date of his first marriage to the date he moved to Memphis and that he also testified that Evelana (Evelene) Marks Rutledge lived in DeSoto County, Mississippi at the time of the marriage, and that she continued to live there in that county until about 1935 when she moved over to Tunica County, Mississippi, where he says she resided ever since; that a year or two after she left DeSoto County he found that she had remarried but did not know whether that occurred before she left DeSoto County or after she moved to Tunica County. The record reveals a properly certified certificate of the marriage of Willidm Rutledge and Evelana (Evelene) Marks, consummated in Tunica County, Mississippi, proper certificate of James B. Tipton, Chancery Clerk of the Chancery Court of Desoto County, Mississippi, and certificate of H. C. Webb, the Chancery Court Clerk of Tunica County, Mississippi, and each certified that the records of their respective offices had been searched and that they did not reveal any action or proceedings for the dissolution of the marriage of William Rutledge and Evelana or Evelene Rutledge. The parties also admitted that the record of the courts of Shelby County, Tennessee revealed no action by any of them whereby the former marriage of William Rutledge had been dissolved or divorce granted. This finding further recites the fact that on cross-examination the defendant William Rutledge admitted that he had in 1925, after his marriage to Evalana (Evalene) Marks Rutledge, married one Mary Hudson in Hernando, Mississippi, the license issuing

from proper authorities in DeSoto County, Mississippi, and that he lived with Mary Hudson until seven months later when they separated because they realized the marriage was "no good." After setting out the above, the court then said:

"The complainant inquired of the defendant before she entered into the marriage with him as to whether he had previously been married and he assured her that he had not; the first complainant knew of the marriage of the defendant and Evelene Marks Rutledge was upon the filing of the cross bill of the defendant.

"It is admitted by the defendant that the marriage between the parties hereto was regularly solemnized. The complainant comes before the Court asserting the validity of the marriage, asking that it be dissolved and that she be awarded alimony. The defendant on the other hand says, 'I am not married to this woman because at the time I married her I was married to another woman.'

"The law presumes the validity of the marriage hereto and the burden is upon the defendant to establish that it is invalid. Gamble v. Rucker, 124 Tenn. 415 [137 S. W. 499]; Payne v. Payne, 142 [Tenn.] 320, [219 S. W. 4].

"In reference to this presumption of legality the latest we have from the Supreme Court of our State is in the case of Barnett v. Barnett, opinion for publication filed on 4-25-53. Said the Court: 'The presumption of the legality of marriage is one of the strongest in the law and as said in Gamble v. Rucker, supra, to overcome this presumption, the evidence

must be cogent and convincing; and as said in American Jurisprudence, supra, it must be strong, distinct, satisfactory and conclusive.'

"If the former spouse of one subsequently married be living at the time of the subsequent marriage, the law presumes, in cases involving the settlement of property rights, that one or the other party to the former marriage had procured a divorce before the second marriage was entered into; and the burden is upon the person attacking the validity of such subsequent marriage to show that there was no such divorce. Gamble v. Rucker, supra.

"The fact that a person formerly married was not divorced before purporting to marry another person is established prima facie, by evidence that no divorce decree is enclosed by the records of the Courts having jurisdiction in any of the Counties in which the parties, or either of them, to the first marriage resided from the time of that marriage through the time of the second attempted marriage of one of the parties to another person. Prewitt v. Prewitt, 192 Tenn. 227 [240 S. W. (2d) 521].

"As the Court had stated the defendant has presented the certificate of the Clerk of the Chancery Court of DeSoto and Tunica County, Miss. to the effect that there was no divorce decree of record dissolving the marriage of Evelene Rutledge and William Rutledge in these Counties. The certificates embrace the required period of time.

"However, as the Court understands the rule, the certificates of the Clerk of the two above mentioned counties will not be sufficient unless the court

is satisfied that the parties to the first marriage have lived in no other counties other than the two counties mentioned.

"The defendant William Rutledge offered no witnesses to corroborate his testimony as to his residence or that of Evelene Rutledge—nor is there any circumstance present to support him.

"Accepting as true the earliest date of the marriage of the parties hereto, 1937, as testified to by the defendant, there is a difference in time between William Rutledge's marriage to Evelene Rutledge on June 27, 1922 and his marriage to the complainant herein, of 15 years.

. "The Court was not impressed by the appearance of William Rutledge at the trial, his action and demeanor while testifying.

"The Court is not willing to accept, and does not accept the testimony of the defendant William Rutledge as being sufficient to establish that he nor Evelene Rutledge has never resided in any other places that DeSoto and Tunica Counties, Miss. during the long period of time intervening between the separation of Evelene and William Rutledge in 1923 and his later marriage to the complainant.

"In the case of Barnett v. Barnett, supra, upon the issue of the validity of a second marriage by jury refused to accept the testimony of the wife to the first marriage as being sufficient to overcome the presumption that the first marriage had been dissolved by divorce. The verdict was approved by the Chancellor and upheld in the Supreme Court.

"To accept the testimony of William Rutledge that Evelene Rutledge had not resided any place other than DeSoto and Tunica County, Miss. would seem to the Court to make the presumptions above mentioned very weak presumptions subject to being overthrown almost at the will of a party seeking to avoid the consequences of a ceremonial marriage.

"Aside from the Court's unwillingness to accept the testimony of William Rutledge there is a serious question as to whether the Court would have a right to accept the same as a matter of law. The complainant asserts the validity of her marriage and asks that it be dissolved. In order for the Court to do this it is required that her testimony be corroborated unless she proves it is impossible for her to secure corroborating testimony. Fulford v. Fulford, 156 Tenn. 640 [4 S. W. (2d) 350].

"While the defendant does not ask that the marriage be dissolved by divorce he does seek to destroy it by asserting there is no marriage. It doesn't seem just, fair nor reasonable to the Court to say to the complainant, who asserts the validity of the marriage and asks that it be dissolved, that you must corroborate your testimony, and at the same time say to the defendant who seeks to overcome the strong presumption of validity and destroy the marriage, that your testimony need not be corroborated as to every essential element necessary to overcome the presumption.

"The proof discloses that the defendant under threat of violence drove the complainant away from their home on other occasions than the last separa-

tion. Each time she returned under his promises to make her a better husband. Complainant has established the ground of cruel and inhuman treatment, and taking the view that his act in forcing her to withdraw amounts to a constructive abandonment of complainant, coupled with the fact that he has not supported her since, that complainant has also established the ground of abandonment and non support.

"The Court decrees a divorce to complainant on the grounds of Cruel and inhuman treatment and abandonment and non support.

"Now, as to alimony.

"The Court finds the complainant to be a very deserving negro woman. Her exact age does not appear in the record, but from her appearance the Court can very definitely designate her as well into 'middle age'. She has engaged herself in useful employment substantially all of the years she has been married to defendant. She has contributed substantially to the purchase of the small home and its furnishings in addition to maintaining and keeping the home as a dutiful wife to the defendant. The home was purchased in 1945. There is no proof as to its present value but the proof is they paid $1,400.00 for it and it was mortgaged at the time of the trial for "something over $300.00". The defendant has had the use and occupancy of the home since he drove complainant out.

"The Court is of the opinion that as alimony the complainant is entitled to all right, title and interest the defendant has in and to the home and the furnish-

ings therein, and the decree shall so adjudge. Counsel for the complainant is allowed an additional sum of $75.00 for his services in behalf of complainant."

The Court, as shown by the foregoing opinion having expressly found that the proof offered by William Rutledge, that there had been no dissolution of his former marriage to Evelana (Evelene) Rutledge is correct or incorrect appears to this Court, with the record as filed here to be the only real question for determination. That is, whether the Court erred in holding that the certificates of the respective clerks of the Chancery Courts of DeSoto and Tunica County, Mississippi, the admission of the parties that the records of the respective courts of Shelby County, Tennessee, having divorce jurisdiction, did not reveal a dissolution of that marriage, and the otherwise unsupported testimony of William Rutledge, and the further fact that the complainant amended her original bill so as to allege, as a grounds for divorce in her behalf, the former undissolved marriage, is sufficient to overcome the presumption of the validity of the marriage of William Rutledge to Maudell Rutledge.

█ For the strength of such a presumption the trial court and this Court accept the language of the Supreme Court of Tennessee in the unpublished Opinion in the case of Barnett v. Barnett, thoroughly supported by the opinion in the Case of Gamble v. Rucker, supra, as it relates to such a presumption of marriage.

The defendant and cross-complainant seems to have rested their case squarely upon the opinion of the Supreme Court in the case of Pewitt v. Pewitt, 192 Tenn. 227, 240 S. W. (2d) 521, and the cases therein referred to, but particularly that part of the opinion printed on

page 231 of 192, Tenn. on page 522 of 240 S. W. (2d), wherein the Court said:

"The fact that a person formerly married was not divorced before purporting to marry another person is established, prima facie, by evidence that no divorce decree is disclosed by the records of the Courts having jurisdiction in any of the counties in which the parties, or either of them, to the first marriage resided from the time of that marriage through the time of the second attempted marriage of one of the parties to another person."

For the support of that statement the cases of Gamble v. Rucker, 124 Tenn. 415, 137 S. W. 499 and Payne v. Payne, 142 Tenn. 320, 219 S. W. 4.

It will be observed that, in the Pewitt case the parties had lived in Fayette and Shelby Counties, both within this State, the entire time in question. Not so with the case now before us. William Rutledge and Evelana (Evelene) Marks Rutledge are revealed, as found by the court, to have lived in DeSoto County and Tunica County, in the State of Mississippi and William Rutledge to have lived for more than thirteen years in Shelby County, Tennessee.

We cannot overlook the fact that the Court which heard the parties testify, saw them giving their testimony and who, as revealed by the finding of facts must have observed each of them very, very closely, has expressly found that he "is not willing to accept, and does not accept the testimony of the defendant William Rutledge as being sufficient to establish that he or Evelana (Evelene) Rutledge has never resided in other places than DeSoto

and Tunica Counties, Mississippi, during the long period of time intervening between the separation of Evelana (Evelene) and William Rutledge in 1923 and his later marriage to the complainant.''

As stated by the court, accepting the earliest date as fixed by the defendant for his marriage to Maudell Rutledge as 1937, there is a difference in time between William Rutledge's marriage to Evelana (Evelene) Rutledge, as shown by the marriage certificate filed as evidence and in the transcript before us of fifteen years. It is true that the finding of the court reveals the fact that William Rutledge testified that he was back in Tunica County occasionally and saw Evelana (Evelene) but no other witnesses testified that this Evelana (Evelene) had lived in DeSoto and Tunica Counties during that entire period.

██ Without all of the evidence in this case preserved by a bill of exceptions, and with the statement of the trial court, as above set out, we are not willing to deny to that court the right to determine the weight and sufficiency of the evidence of the witnesses, and particularly one who is personally and economically directly connected as a party to the proceedings. To do so would make this Court one of original jurisdiction to that extent.

Now as to the admission in the original bill of Maudell Rutledge, as amended, we are requested to accept, as proof in the case the averments of her amended bill filed on March 25, 1953 (R. 21), to the effect that ''William Rutledge, has knowingly entered into his second marriage, in violation of a previous marriage still subsisting'', and to bind her by that statement so that she cannot rely upon the statements of her original bill to the effect

that she is the lawful wife of William Rutledge. The circumstances under which this amended bill was filed and sworn to are revealed by the order of the court made on May 18, 1953 (R. 18), wherein it is stated:

"This cause came on this day to be heard and the Court having heretofore ordered that the complainant's original bill be amended to allege the date of the separation as August 15, 1942; and that the complainant's bill allege as an additional ground for divorce that the defendant, William Rutledge, had knowingly entered into a second marriage in violation of a previous marriage, still subsisting * * *".

together with the order under date of March 20, (R. 20), allowing such amendment to be made, and the amended bill filed on March 25, 1953, (R. 21), which shows that it was not sworn to until the 16th day of May 1953. The further fact that cross-defendant Maudell Rutledge first filed a simple answer to the cross-bill in which she had stated that she "neither admits nor denies said allegations, but if her rights are in any wise involved, demands strict proof thereof."

We do not think that the filing of the amendment to the original bill, under the circumstances set out above, constitutes such a voluntary averment in the pleadings as should, under all the circumstances in this case, be considered a legally binding admission of the defendant of the truth of the averments set forth in the cross-bill, so that it would make it unnecessary to convince the court, by competent and sufficient proof, of the truth of the allegations of the cross-bill.

Divorce cases are in the nature of Chancery Suits, and proceedings in them are according to the course of

practice in Chancery, except for a difference is made by statute. Richmond v. Richmond, 18 Tenn. 343; Hawkins v. Hawkins, 36 Tenn. 105; Gibson's Suits in Chancery, 4th Ed. Section 1093.

Therefore, in addition to the statements made in the finding of facts by Judge Wilson that he could not accept the testimony of William Rutledge, we may say that if there are cases, in this modern age, where litigants with clean hands, when seeking to have their legal disputes settled, such exists in cases when the litigation is between husband and wife. As an element to be considered with respect to the weight and sufficiency of William Rutledge, is the fact that the record reveals his deception of Maudell Rutledge by assuring her before their marriage, upon her inquiry, that he had not been married before and continued that deception from that time to the date he filed his cross-bill in this case. His conduct in that regard had been unconscientious and constituted a glaring show of bad faith in connection with the very transaction involved before the court. In short he simply says:

"I did wrong, I am guilty of a felony, give me the legal right to take advantage of my own crime."

His testimony under all these circumstances required very rigid and strict corroboration before being accepted as the truth. The trial court correctly rejected his testimony respecting the places and times where he and his first spouse, Evelana (Evelene) Rutledge had lived over such long intervention of years between his separation from her and his marriage to Maudell.

In the finding of facts the application of law as shown by the opinion of the trial court there is a further state-

ment to the effect that if the court is in error as to the conclusions reached, and referred to hereinbefore in this opinion, the complainant would be entitled to a divorce upon the ground that the defendant knowingly entered into the marriage with complainant in violation of the previous marriage still subsisting, and that the complainant should be entitled to alimony.

Since the court based his decree upon the grounds of cruel and inhuman treatment and abandonment, and we have approved his action in connection with his analysis of the reasons why he rejected the testimony of William Rutledge, it is unnecessary for us to comment further with respect to his conclusion that the complainant would be entitled to alimony, had he decreed her a divorce on the grounds of that previous undissolved marriage. His action in granting the divorce and in decreeing alimony is approved, the entire decree affirmed, and the plaintiff-in-error, William Rutledge, is taxed with the cost of this case in this Court, and judgment is entered against the sureties on his appeal bond therefor.

Swepston, P. J. (W. S.), and Carney, J., concur.