# ELIZABETH H. McCOWN v. FRANCES M. QUILLIN et al.

# RUTH H. McCOWN v. OSWALD S. McCOWN, JR., et al. —344 S. W. (2d) 576.

Western Section, at Jackson.  October 26, 1960.

Certiorari Denied by Supreme Court March 10, 1961.

Apperson, Crump, Duzane, & McRae, and James S. Shields, Memphis, for appellants.

John H. Mitchell, Jr., Memphis, Guardian, ad Litem.

Hanover, Hanover, Hanover & Walsh, Memphis, for appellee.

Ed M. Lowrance, Memphis, for Estate of O. S. McCown, Jr.

BEJACH, J. We have before us appeals from two Shelby County Chancery causes,—one from Part II, and the other from Part I of that Court. They were argued together in this Court and will be disposed of in one opinion. Number 8, Shelby Equity, which was No. 61262 R. D. in the lower court comes from Part II, and No. 5, Shelby Equity, which was No. 54817 R. D., comes from Part I.

The cause from Part II of the Shelby County Chancery Court was styled "Elizabeth H. McCown, Individually, Petitioner vs. Frances M. Quillin, John W. Apperson and Charles M. Crump, Trustees, Ruth H. McCown, Fannie B. McCown, Ruth McCown Drewry, Oswald Stewart Mc-Cown, III, Frances Elizabeth McCown, Murray Harwood McCown, a Minor, Richard Drewry McCown, a Minor, James Eugene McCown, a Minor, and Elizabeth H. McCown, Administratrix, C. T. A. of the Estate of O. S. McCown, Jr., Deceased, Defendants". The case from Part II may properly be styled the principal cause. It will be disposed of first, as the question involved on the appeal from the cause in Part I grew out of it, and as disposition of the legal question therein involved is not necessarily determinative of the appeal from the cause from Part I; whereas on the other hand, affirmance of the cause from Part I would be conclusive of the result to be reached in the cause appealed from Part II. The cause appealed from Part I involves only secondarily and incidentally the

question on which depends the outcome of these two causes, while in the cause appealed from Part II, that question is directly presented for adjudication. The question is: Is Elizabeth H. McCown legally the widow of Oswald, Jr., who died testate on the 5th day of November, 1954, a resident citizen of Shelby County, Tennessee. The will of Oswald S. McCown, Jr. was duly probated in the Probate Court of Shelby County, and Elizabeth H. McCown was appointed administratrix, c. t. a. She was the sole beneficiary under his will; but when it developed that his estate was and is insolvent, she dissented from the will and elected to take a year's support, dower, and homestead in the estate of Oswald S. McCown, Jr. After suggesting the insolvency of said estate, Elizabeth H. McCown, as Administratrix, c. t. a., filed a petition in the Probate Court of Shelby County seeking a sale of real estate owned by Oswald S. McCown, Jr., and by orders duly entered in said Probate Court, said real estate was sold and title divested, with the result that the sum of approximately $16,557.58 was realized for the estate of Oswald S. McCown, Jr. Subsequently, on March 10, 1959, Elizabeth H. McCown, in cause No. 61262 R. D., filed suit in Part II of the Chancery Court of Shelby County, praying that she be adjudicated to be the widow of O. S. McCown, deceased, and that she be awarded dower out of the proceeds of the sale of real estate had in the Probate Court. Later, her bill was amended, seeking an allowance of homestead as well as dower out of the proceeds of said sale. Ruth H. McCown, first wife of Oswald S. McCown, who was divorced from him in June 1953 in cause No. 54817 R. D. in Part I of the Shelby County Chancery Court, Frances M. Quillin, sister of Oswald S. McCown, Jr., John W. Apperson, and Charles M. Crump, Trustees,

Fannie B. McCown, mother of Oswald S. McCown, Jr., all of the children of Oswald S. McCown, Jr. by his first wife, Ruth H. McCown,—three of whom are minors and represented by guardian ad litem, filed answers denying that Elizabeth H. McCown is the widow of Oswald S. McCown, Jr. and asserting that she is, therefore, not entitled to have dower and homestead awarded out of the proceeds of the sale of real estate. The estate of O. S. McCown, Jr., represented in this cause by Mr. Ed M. Lowrance, takes a neutral position.

The contention made by Mrs. Frances M. Quillin, Mrs. Ruth H. McCown, and other defendants, that Mrs. Elizabeth H. McCown is not the widow of Oswald S. McCown, Jr., is based on the fact that the decree in the case of Ruth H. McCown vs. Oswald S. McCown, Jr., No. 54817 R.D. in Part I of the Chancery Court of Shelby County, which granted to Ruth H. McCown a divorce from Oswald S. McCown, Jr., although rendered in that Court in the forenoon of June 9, 1953, was not entered on the Minutes until June 17, 1953, and the marriage ceremony which purported to unite in marriage Oswald H. McCown, Jr. and Elizabeth H. McCown (at that time, Mrs. Elizabeth H. Lawrence), was performed at Hernando, Mississippi during the afternoon of June 9, 1953. Their contention is that the divorce decree did not become effective until it was entered on the Minutes June 17, 1953, and consequently, that when Oswald H. McCown went through the ceremonial marriage with Elizabeth H. Lawrence, he had a living wife, which made said marriage to Elizabeth H. Lawrence invalid. Hon. Ceylon B. Frazer, Chancellor of Part II of the Chancery Court of Shelby County, in which this cause was filed, recused himself, and the cause was heard by Hon. John W. Loch as Special Chancellor.

While the cause was on trial before Special Chancellor Loch, and after all other proof had been offered, counsel for Mrs. Elizabeth H. McCown moved for a recess to permit the filing in Part I of the Chancery Court of a petition on behalf of Mrs. Elizabeth H. McCown, seeking to have cause No. 54817 R.D. in that part of the Court, transferred to Part II, or in the alternative, to obtain the entry of a decree nunc pro tunc, making the decree entered June 17, 1953 on the Minutes of Part I of the Chancery Court of Shelby County speak as of June 9, 1953, on which date same was rendered. This motion was granted, and all counsel in the cause in Part II appeared before Chancellor Hoffmann of Part I. Chancellor Hoffmann declined to transfer the cause to Part II, but granted the alternative relief by entering a nunc pro tunc decree. His action in that regard is what is involved on the appeal in cause No. 5, Shelby Equity. Thereafter, trial of the cause in Part II of the Chancery Court was resumed and the proceedings before Chancellor Hoffmann in Part I, including the nunc pro tunc decree, were offered as proof in the cause pending in Part II. Special Chancellor Loch took the cause under advisement, and later handed down an opinion which decided the case in favor of Mrs. Elizabeth H. McCown, and declared her to be the legal widow of Oswald S. McCown, Jr. and entitled to have homestead and dower awarded to her,—for which purpose he ordered a reference to the Clerk and Master. Chancellor Loch reached his conclusions, without considering the proceedings before Chancellor Hoffmann, or the nunc pro tunc decree entered in Part I. He based this result on his ruling that the divorce decree in the case of Ruth H. McCown vs. Oswald S. McCown, Jr., in Part I of the Chancery Court, was effective from the time same was

rendered on the morning of June 9, 1953, rather than from the time when same was entered on the Minutes June 17, 1953; and, consequently, that Mrs. Elizabeth H. McCown, who did not marry Oswald S. McCown, Jr. until after that decree was rendered, was lawfully married to Oswald S. McCown, Jr., and is now his widow. Undisputed proof had established that on the morning of June 9, 1953, Hon. Larry Creson, at that time Chancellor of Part I of the Shelby County Chancery Court, had granted to Mrs. Ruth H. McCown a decree of absolute divorce from Oswald S. McCown, Jr., and that the rendition of such decree was noted on the trial docket of the Court by the Clerk of that Court. The decree, itself, although not entered on the Minutes until June 17, 1953, contains the following recital, "This cause came on to be heard the 9th day of June, 1953 upon the original bill of divorce, etc.". Rule 12 of the Rules of Practice of the Chancery Court of Shelby County, Tennessee, which is before us, and which was in force and effect, on both June 9, 1953 and June 17, 1953, provides:

"Orders or decrees shall not be dated on the face of same, but shall take effect and speak as of the date of entry on the Minutes; provided that the Court may, in its discretion, permit orders or decrees to become effective and speak as of the time of the decision of the cause or ruling on the matter disposed of in the particular order or decree or as of any time between that time and the date of entry on the Minutes."

■ In the case of Jackson v. Jarratt, 165 Tenn. 76, 52 S. W. (2d) 137, 138, the Supreme Court, in an opinion written by Mr. Justice Chambliss, discusses at some

length the difference between the words ''rendered'' and ''entered'' as applied to a judgment or decree, and construes the term ''rendered'' as appears in Section 8980, Code of 1932, Sec. 4847, Shannon's Code, as meaning when the judgment was announced, rather than when it was spread on the Minutes. Said section 8980 of the Code of 1932, which has since been changed as now embodied in Section 27-201, T. C. A., was:

"A rehearing can only be applied for at the term of the Court at which the decree sought to be effected is rendered."

What had happened in the case of Jackson v. Jarratt was that a judgment had been rendered in the Circuit Court of Shelby County on the 17th day of March 1932, during the January term of that Court, which expired on the 19th day of March of that year, but no judgment was entered on the Minutes until April 2, 1932, which was during the March term of court. At that time, a nunc pro tunc order was granted, entering the judgment as of March 17, 1932. Thereafter, the losing party undertook to file a motion for a new trial, as a prerequisite for appeal, which the trial judge refused to her because the motion for new trial was not made until after the term had expired. On mandamus proceedings before the Supreme Court, it was held that a nunc pro tunc judgment, although otherwise entirely proper, could not be used to deprive the losing party of his right of appeal. Same was accordingly vacated and a new trial granted. From the opinion of Mr. Justice Chambliss, we quote, as follows:

" 'Rendered' means expressed or announced in a conclusive manner and with decisive effect, certainly

so when at the same time notation of it is made on a judgment docket, or other more or less permanent memorandum record kept by the judge for the purpose. 'The rendition of judgment, and the entry of judgment are different and distinct, each from the other. The former is the act of the court, while the latter is the act of the clerk of the court. * * * To render judgment is to return or give judgment; and it cannot be said, in our opinion, that the phrase, in any of its forms, includes the idea of making a written entry or record of a judgment.' Anderson v. Mitchell, 58 Ind. 592, 594; Gray v. Palmer, 28 Cal. 416.

"Insisting that the word 'rendered' in the statute means 'entered on the minutes,' counsel for petitioner relied on expressions in recent opinions of this court (Feldman v. Clark, 153 Tenn. 373, 284 S. W. 353; England v. Young, 155 Tenn. 506, 511, 296 S. W. 14; Shipley v. Barnett, 161 Tenn. 437, 32 S. W. (2d) 1022) to support this insistence.

"The expressions relied on are without the determinative significance suggested. In all of these cases an entry of the judgment had been made, and the court was passing on the situation thus presented. The terms 'rendered' and 'entered' were used without consideration of, or reference to, any distinction in meaning, or effect, as between the terms.

*     *     *     *     *     *

"These and other definitions and holdings would seem to support the view that the word 'rendered,' as used in our statute above quoted, means announced

or ordered. However, we are constrained to hold that the right to move for a new trial, and an appeal, was erroneously cut off under the undisputed circumstances of the case before us.

"Conceding that the strict definition of the word 'rendered' is as above stated, we are of opinion that its use in our statute contemplates that the rendition of the judgment will be carried into binding and effective form by entry upon the minutes, consistently with our numerous holdings that the Court speaks authoritatively only through its records. For example, Fraker v. Brazelton, 80, Tenn. (12 Lea) 278, 280, 281; State v. True, 116 Tenn. 294, 313, 95 S. W. 1028." Jackson v. Jarratt, 165 Tenn. 79-81, 52 S. W. (2d) 137.

We concur in the result reached by Special Chancellor Loch; but on a slightly different line of reasoning.

█ Since Rule 12 of the Rules of the Chancery Court of Shelby County provides "Orders or decrees shall not be dated on the face of same, but shall take effect and speak as of the date of entry on the Minutes; provided, that the Court may, in its discretion, permit orders or decrees to become effective and speak as of the time of the decision of the cause", and since Chancellor Creson who rendered the decree of divorce on the morning of June 9, 1953 in the case of Ruth H. McCown vs. Oswald S. McCown, Jr., must be presumed to have been familiar with the rules of his own court and yet permitted the decree in that case to contain the recital, "This cause came on to be heard the 9th day of June 1953", he must also be presumed to have thought the recital to be sufficient to make the decree speak as of June 9, 1953 when

it was rendered, without otherwise ordering it entered nunc pro tunc, as he could have done at that time. At least, the fact that Chancellor Creson permitted that recital to remain in the decree, without striking it out to make the decree comply with the provisions of Rule 12, creates enough ambiguity in the situation to permit the introduction of the extraneous evidence, which was offered before Special Chancellor Loch in the form of the entry made on the Clerk's Trial Docket on June 9, 1953. The right to introduce such extraneous evidence where the Minutes of a trial court are ambiguous, has been clearly established in this State by the decision of our Supreme Court in Hoodenpyle v. Patterson, 197 Tenn. 621, 277 S. W. (2d) 351.

Based on the evidence before him, which is also before us in the bill of exceptions, we think Special Chancellor Loch was correct in his conclusion that under the facts of this particular case, the decree of divorce rendered during the morning of June 9, 1953 in the case of Ruth H. McCown vs. Oswald S. McCown, Jr., but not entered on the Minutes of the Court until June 17, 1953, became effective when rendered, rather than when entered, and, consequently, that the marriage of Oswald S. McCown to Elizabeth H. Lawrence in the afternoon of June 9, 1953, after the rendition of said decree, was legal.

The conclusion which we have reached, and which was reached in the lower court by Special Chancellor Loch, that appellee, Elizabeth H. McCown was legally married to Dr. Oswald S. McCown, Jr., is fortified by the circumstance that it is in harmony with the established public policy of the State of Tennessee to protect marriage with every presumption of legality. Among the cases maintaining this rule of public policy are the de-

cisions of the Supreme Court, written by Mr. Justice McKinney, in Cole v. Parton, 172 Tenn. 8, 108 S. W. (2d) 884, and of this Court, written by Judge Avery, our Presiding Judge, in the case of Rutledge v. Rutledge, 41 Tenn. App. 158, 293 S. W. (2d) 21.

As stated above, the Special Chancellor trying this case in the lower court, reached his decision without considering either the proceedings had in Part I of the Chancery Court, during the recess granted for that purpose, or the nunc pro tunc decree making the decree in the McCown divorce case speak as of June 9, 1953, although the transcript of those proceedings was tendered to him. If he had considered those proceedings, and especially the nunc pro tunc decree granted as a result of same, he would have had an additional and unassailable ground for decreeing that Mrs. Elizabeth H. McCown was the legal widow of Oswald S. McCown, Jr. The transcript of the proceedings in Part I of the Shelby County Chancery Court, and the nunc pro tunc decree granted pursuant thereto, are before us in the record of Shelby Equity cause No. 5, which was argued in this Court, along with Shelby Equity cause No. 8, hereinabove discussed. We will now dispose of the appeal in that case.

The record in Shelby Equity cause No. 5, Ruth H. McCown vs. Oswald S. McCown, No. 54817 R. D., in the Chancery Court of Shelby County, starts with the decree of divorce, custody of children, alimony and child support entered June 17, 1953. In addition, the record embodies all proceedings subsequent to the entry of that decree, including the intervening petition of Elizabeth H. McCown filed February 24, 1960, the decree ordering the former decree to be entered nunc pro tunc, which was

recorded February 26, 1960, the Rules of Practice of the Chancery Court of Shelby County, Tennessee, the entry on the Clerk's Trial Docket of June 9, 1953, and a bill of exceptions embodying the proceedings before Chancellor Robert Hoffmann, incident to the intervening petition and the granting of the nunc pro tunc order pursuant thereto. The appeal to this Court attacks the validity of that nunc pro tunc decree.

We think, on authority of Rush v. Rush, 97 Tenn. 279, 37 S. W. 13, that the nunc pro tunc decree granted by Chancellor Robert Hoffmann of the Shelby County Chancery Court, Part I, was eminently proper, and that it is in all respects a valid decree. In that case, James Rush had, in the Circuit Court of Hamilton County, sued his wife, Chaney Rush, for divorce, and a decree granting such divorce had been rendered, but not entered on the Minutes of the Court. A note of the judgment had, however, been made by the judge on his docket. Subsequently, James Rush, representing himself to be unmarried, had, for a valuable consideration conveyed certain real estate,—after which he had died. Subsequent to his death, Chaney Rush, claiming to be his widow, set up a claim for homestead in the property conveyed by James Rush as an unmarried person on the ground that she had not joined in the conveyance thereof. Thereupon, on behalf of the owners of the property conveyed by James Rush, a petition was filed, by one Myer and others, in the Circuit Court case of Rush v. Rush, praying that the judgment of divorce be entered nunc pro tunc,—which petition was granted. On appeal, this action of the Circuit Court judge was affirmed by the Supreme Court. From the Supreme Court's opinion, written by Mr. Justice Beard, we quote, as follows:

"All courts have the right, and it is their duty, to make their records speak the truth, and a court, therefore, in a proper case, of its own motion, may order a nunc pro tunc entry to be made; and no sound reason can be suggested why they should not exercise this right and discharge the duty upon the suggestion of one whose rights are impaired by the failure of the record to state the truth. 1 Freeman on Judg., sec. 64; Balch v. Shaw, 7 Cush., Mass. 282; * * * Crim v. Kessing, 89 Cal. 478, 26 P. 1074. And the lapse of time between the announcement of judgment and the making of this motion is of no importance; that which is important is, that the proof be clear and convincing that the judgment which it is sought to have entered is the one pronounced in the cause. 1 Freeman on Judg., sec. 61.

"This rule applies as well to divorce proceedings as to any other, and its application is not affected by the fact that one of the parties to the cause is dead at the time the nunc pro tunc entry is sought." Rush v. Rush, 97 Tenn. 281-282, 37 S. W. 13, 14.

In the instant case, the Clerk's entry on the Trial Docket on June 9, 1953, constituted, in our opinion, evidence justifying the entry of the nunc pro tunc decree, just as in the case of Rush v. Rush, the judge's note on his docket, constituted necessary evidence. The Clerk's entry on the Trial Docket, in the instant case, may, indeed, have been stronger evidence than a memorandum made by the Chancellor on June 9, 1953, and especially so because the Chancellor who rendered the decree in 1953 was not presiding over that Court in 1960 when the nunc pro tunc decree here involved was entered. The author of

this opinion, on that account, expressed during the argument of this case, some doubt as to whether, in that situation, a nunc pro tunc decree could be properly entered by a successor Chancellor. That doubt has, however, been dispelled by the decision of this Court (Eastern Section), with certiorari denied by the Supreme Court, in the case of Wind Rock Coal & Coke Co. v. Robbins, 1 Tenn. App. 734. In that case, the entry of a nunc pro tunc judgment in the Circuit Court of Anderson County by Judge Buttram, who had succeeded Judge Morrison of that Court, was expressly approved. From that decision, we deduce the conclusion that, in a proper case, a successor judge may, by nunc pro tunc judgment or decree, make the record of his Court speak the truth, even where such judgment or decree involves the action of a predecessor judge.

It is argued by counsel for appellants, however, that in the case of Rush v. Rush no decree of divorce had been entered on the Minutes prior to the nunc pro tunc decree; whereas, in the instant case, a decree had been entered on June 17, 1953, without providing that it be made effective nunc pro tunc as of June 9, 1953. It is their contention that while a nunc pro tunc order or decree may properly be made to supply a missing decree, it cannot be used to correct a decree already entered. We cannot agree with that contention. We hold that, in a proper case, a nunc pro tunc decree may be used to correct an existing decree, as well as to supply a missing decree. In the instant case, no change is made, however, in the existing decree of June 17, 1953, except to change, based on the trial docket entry of June 9, 1953, the effective date of that decree. As to the justice and equity of making this change, and of the sufficiency of evidence to

warrant making it, Chancellor Hoffmann was just as capable of judging as would have been Chancellor Creson who signed the decree entered June 17, 1953, if he had remained on the Bench. We hold, consequently, that the entry of the nunc pro tunc decree by Chancellor Hoffmann on February 26, 1960 was a valid exercise of his judicial authority.

Counsel for appellants cite the case of Thomas v. State, 206 Tenn. 633, 337 S. W. (2d) 1, decided by the Supreme Court, May 4, 1960, with rehearing denied June 6, 1960, as the most recent ruling of the Supreme Court on the subject of nunc pro tunc orders or decrees, and contend that same supports their contentions in the instant case. We cannot agree with them. That case held, simply, that a nunc pro tunc order could not be entered extending the time for filing a bill of exceptions when no previous order to that effect had been made within the time allowed by law. We find no fault with that decision, but think it has no application to the facts of the instant case.

For the reasons hereinabove stated, all assignments of error in both the case of Elizabeth H. McCown vs. Frances M. Quillin, et al., No. 8, Shelby Equity, in this Court, and in the case of Ruth H. McCown vs. Oswald S. McCown, Jr., No. 5, Shelby Equity, in this Court, will be overruled, and the decrees of the lower court in both of said causes, affirmed. Both of these causes will be remanded to the Chancery Court of Shelby County for such further proceedings as may be necessary or proper and not inconsistent with this opinion.

The costs of the appeals will be paid by the appellants and their respective sureties in each of said causes.

Avery, P. J. (W. S.), and Carney, J., concur.